(116 App. Div. 880)

FLASH v. ROSSITER et al.

(Supreme Court, Appellate Division, Second Department. January 25, 1907.)

1. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM—CONSIDERATION.

Plaintiff wrote defendant, submitting a bid for glass that defendant might require during the ensuing year, "American polished plate 70% and 10%," and other varieties were quoted in the same manner. Defendant accepted the offer by letter, and thereafter, and during the year, plaintiff wrote, offering to renew the contract for two years "at present prices," provided defendant would undertake to use the same number of square feet of the various kinds of glass per annum during the next two years as had been used in the last year, and plaintiff agreed that in the event of any reduction in glass prices to modify the prices accordingly, which offer was accepted. *Held*, in an action for breach of the contract, that there was a sufficient writing to satisfy the statute of frauds; there being nothing indefinite in the provision respecting a possible reduction of prices, and it being no objection that a parol explanation of trade terms was necessary to an understanding of the contract.

Hirschberg, P. J., and Rich, J., dissenting.

Appeal from Special Term, Richmond County.

Action by Oscar S. Flash against Edward E. V. Rossiter and others. Appeal by plaintiff from a judgment dismissing the complaint. Reversed.

The following is the opinion of the referee:

The plaintiff brings this action against the defendants as members and shareholders of the Wagner Palace Car Company, a dissolved joint-stock association, to recover damages for the breach by the company of a contract to order and take glass of the plaintiff's assignor. One of the defenses set up in the answer is that the alleged contract was not by its terms to be performed within a year from the making thereof, and that neither it nor any note or memorandum thereof was in writing subscribed by the Wagner Company. Therefore it is contended that the said alleged contract was within the statute of frauds, and void. It seems to me that the contention is well founded and should be sustained. The proofs show that on June 14, 1898, F. H. Dyckman, the plaintiff's assignor, submitted to the Wagner Company an offer to supply it with the glass it might require during the next 12 months, which offer was accepted by the company, and that under the contract so made the said Dyckman, during the year preceding July 1, 1899, did furnish to the company, on its orders, large quantities of various grades and qualities of glass. On the 10th of April, 1899, Dyckman wrote the car company, offering to renew the existing contract for a year from the 1st of July following, "at present prices." The company suggested that the new arrangement should be for a period of two years. To this Dyckman assented—"provided you will undertake to use approximately the same number of square feet of the various kinds of glass per annum in the next two years as you have used in the last year." At the foot of the letter containing this qualified assent the president of the car company subscribed the following: "Renewal of present contract with same guarantee accepted April 19th, 1899, for two years, for the same number of square feet of the various kinds." Under this new arrangement the car company ordered and Dyckman delivered glass until about the 31st of December, 1899, on which date the car company ceased to do business and became dissolved.

It is, I think, too plain to admit of dispute that the new agreement between the parties, which was to commence on the 1st of July, 1899, was by its terms to continue in force for two years from that date. Complete performance was impossible in a single year. The argument of the plaintiff is that the agreement was that during the two years the company should order and Dyckman should supply double the quantity of glass that had been ordered

and supplied under the first contract, that the company was at liberty to order the entire quantity during the first year, and that—using the language of the plaintiff's brief—"if the company had ordered by January, 1900, twice the amount of glass they had used in the year ending July 1st, 1899, Mr. Dyckman could have rightly refused to deliver any further glass under the contract, on the ground it had been completely performed." This, in my opinion, is a clear misconception or misinterpretation of the contract and the rights and liabilities of the parties under it. Dyckman's liability was not to be terminated by the delivery to the car company of twice the amount of glass he had delivered under the first contract. By the first contract he undertook to furnish all the glass the company might require in the next 12 months. By the new contract he undertook to furnish all the glass the company might require during two years from July 1, 1899; the company obligating itself to order as many square feet "per annum," as it had ordered under the first contract. The plain agreement was that the right of the company to demand, and the liability of Dyckman to deliver, should continue through two years, without any limitation on the amount of glass the company might call for. Such an agreement the statute declares to be void unless it, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith. Was there a sufficient note or memorandum in the present case? The agreement on which the action is brought is alleged in the complaint to have been made on or about April 19, 1899. The proofs offered in support of this allegation are Dyckman's letters of April 10 and April 16, 1899, and the car company's written acceptance on April 19th of the offers which those letters contained. These papers, however, are not of themselves sufficient to show the nature and extent of the contract which was made between the parties. They refer to a "contract existing." Dyckman's offer in his first letter is to "renew" that contract for a year "at present prices." His offer in the second letter is to "make the agreement for two years, provided you will undertake to use approximately the same number of square feet of the various kinds of glass per annum in the next two years as you have used in the last year." No reference is made in either letter or in the company's acceptance to the kinds or qualities or sizes of glass concerning which the parties were contracting, or to the prices, other than "present prices," to be paid therefor. The transaction is not capable of being understood without explanation and completion by parol testimony or by reference to other writings. Reference to another paper in such a case is permitted provided it be "so distinct as to make that paper a part of the contract itself." Wright v. Weeks, 25 N. Y. 160. The right of the plaintiff to appeal to the original contract between the parties for the purpose of determining the meaning and terms of the renewal contract is not disputed by the defendants. The original contract is found in Dyckman's written offer or "bid" of June 14, 1898, and the car company's written acceptance of June 25th. The offer was as follows: "I hereby beg to submit to you the following bid for glass that you may require in the next twelve months: American polished plate 70% and 10%, crystal plate 60% and 10%, for double thick French 85% and 7½%, for French plate 70% and 5%, for 26 ounce 50% off, and for mirrors 80%." The company's acceptance was in these terms: "We hereby accept your bid of June 14th for glass that we shall require in the next twelve months, at the following prices, viz." Then repeating, without the slightest change, the styles or grades of glass and the percentages contained in Dyckman's offer. The criticism made by the defendants' counsel is that all these papers combined do not state the prices which the car company was to pay for the glass ordered from Dyckman. This is true. Mr. Dyckman himself testifies that from all these papers he could not "figure out" the prices, and that the only information to be had from them concerning the prices is as to the discounts. Now, in a contract for the sale of goods, the price to be paid is an item of first importance; and if, in the present case, the agreed price for the glass is not shown by the papers constituting the alleged contract, then the contract comes under the condemnation of a multitude of cases. It has always been the rule in this state that the memorandum must set forth "the contract with reasonable certainty, so that the substance of it can be made to appear and be understood from the writing itself, without recourse to parol

proof." This is the language of Judge Kent in Bailey v. Ogden, 3 Johns. (N. Y.) 399, 3 Am. Dec. 509. Similar language has been used in nearly every later case which has dealt with the question of the sufficiency of a note or memorandum. "The memorandum must contain everything that is necessary to show the contract between the parties, so that no parol evidence shall be necessary to explain the intention of the parties or the terms of the agreement." First Baptist Church v. Bigelow, 16 Wend. (N. Y.) 28. "If any of the material terms of the bargain could be left out of the writing and be supplied by parol, the greater part of the mischief intended to be guarded against would remain." Wright v. Weeks, 25 N. Y. 153. "The letter * * * acknowledges the purchase of the goods, but it does not state the price or any of the terms of the contract. These deficiencies cannot be supplied by parol. All the essential parts to the contract must be evidenced by the writing." Stone v. Browning. 68 N. Y. 604. "To a person depending wholly upon the reading, the real contract made is impossible to be ascertained." Drake v. Seaman, 97 N. Y. 230. "The whole current of authority in this state is that the memorandum must contain substantially the whole agreement and all its material terms and conditions, so that one reading it can understand from it what the agreement is." Mentz v. Newwitter, 122 N. Y. 491, 25 N. E. 1044, 11 L. R. A. 97, 19 Am. St. Rep. 541. "The statute requires the contract, or some note or memorandum thereof, to be in writing, and a writing cannot be a memorandum of a contract unless it contains the substance of a complete agreement, so that the full intention of the parties can be ascertained from it alone, without recourse to parol evidence." Cooley v. Lobdell, 153 N. Y. 596, 47 N. E. 783. "All its necessary terms must be contained in the correspondence of the parties read in evidence, without referring to the parol evidence introduced by the plaintiff." Ward v. Hasbrouck, 169 N. Y. 407, 62 N. E. 434.

It is argued in behalf of the plaintiff that glass, when sold in any considerable quantity, is sold at certain discounts from "list prices"; that the "list prices" of all glass houses are uniform; and that the car company contracted with full knowledge of the true meaning of "70%," "10%," "60%," "50% off," and other like expressions used in Dyckman's offer of June 14, 1898, and the company's acceptance of June 25th. This may be so, but it does not answer the defendants' objection. The fact remains that the prices which the car company was to pay for the glass were not stated in the "memorandum," and cannot be ascertained except by appeal to parol testimony, which is absolutely necessary to connect the discounts with the price lists. In Turner v. Lorillard Co., 100 Ga. 645, 28 S. E. 383, 62 Am. St., Rep. 345, the court held that parol testimony was not admissible to connect discounts expressed in the memorandum with prior bills of merchandise sold by the defendant to the plaintiff.

It is further argued that the said expressions as to discounts are trade expressions, and therefore susceptible of explanation, and as an authority for this I am referred to Gowen v. Klous, 101 Mass. 449. That case went before the court on a demurrer to the declaration; and in the course of its opinion the court said: "If the figures and letters used in this memorandum do in fact, and in the light of a prevailing usage, afford this information, the memorandum is sufficient; and whether they do or not will be a question upon the evidence when introduced." In support of this proposition the court cited Salmon Falls Co. v. Goddard, 14 How. (U. S.) 446, 14 L. Ed. 493. The soundness of this decision is doubted in Grafton v. Cummings, 99 U. S. 111, 25 L. Ed. 366. It was disapproved in Mentz v. Newwitter, 122 N. Y. 497, 25 N. E. 1044, 11 L. R. A. 97, 19 Am. St. Rep. 514. Even if the rule were as stated in the Goddard Case, it could not by any reasonable application be made to serve so as to connect the glass price lists with the memorandum subscribed by the Wagner Company, and so incorporate the lists into the contract that was attempted to be made.

For these reasons, the complaint should be dismissed.

Argued before HIRSCHBERG, P. J., and HOOKER, RICH, MILLER, and GAYNOR, JJ.

Arthur A. Michell, for appellant.

Allan McCulloh (Henry Hill Pierce, on the brief), for respondents.

MILLER, J. The plaintiff appeals from a judgment dismissing his complaint entered on the report of a referee. The action is brought against the defendants as former members of a dissolved joint-stock association, the Wagner Palace Car Company, to recover damages for breach of a contract claimed to have been entered into between the plaintiff's assignor and said association, pursuant to which the latter agreed to purchase of said assignor the various kinds and qualities of glass used by it for the period of two years from July 1, 1899.

The defendants set up the statute of frauds as a defense, and the learned referee dismissed the complaint upon the ground that the contract was one not by its terms to be performed within a year from the making thereof, and was void because not evidenced by the writing required by the statute. On June 14, 1898, the plaintiff's assignor wrote said company the following letter:

"New York, June 14, 1898.

"The Wagner Palace Car Co.—Dear Sirs: I hereby beg to submit to you the following bid for the glass that you may require in the next twelve months: American polished plate 70% and 10%; Crystal plate 60% and 10%; for double thick French 85% and 7½%; for French Plate 70% and 5%; for 26 ounce 50% off, and for mirrors 80%. * * *

"Yours truly,            F. H. Dyckman."

And received the following reply:

"New York, June 25, 1898.

Mr. F. H. Dyckman—Dear Sir: We hereby accept your bid of June 14th, for glass that we shall require for the next 12 months, at the following prices, viz.: American Polished Plate, 70% and 10%; Crystal Plate 60% and 10%; for double thick French 85% and 7½%; for French Plate 70% and 5%; for 26 ounce, 50% off, and for mirrors 80%.

"Yours very truly,        · W. S. Webb, President."

The contract thus made was nearly performed when the following correspondence occurred, which the plaintiff claims establishes the written contract for breach of which this suit is brought, to wit:

"New York, April 10, 1899.

"Wagner Palace Car Company—Gentlemen: In connection, with the enclosed, I hereby offer to renew the contract existing between your company and me, which expires July 1st next, for one year from that date at present prices, and I further agree that in the event of any reduction in glass prices by the trade generally to modify prices accordingly.

"Yours truly,            F. H. Dyckman."

"New York, April 16, 1899.

"Wagner Palace Car Company—Dear Sirs: Referring to your acceptance (dated April 15th) of my letter of April 10th on the subject of glass and your suggestion that the arrangement be made for two years instead of one, I beg to say that I will make the agreement for two years provided you will undertake to use approximately the same number of square feet of the various kinds of glass per-annum in the next two years as you have used in the last year. Under these circumstances, I will guarantee you against any advance in price and give you the benefit of any trade reduction, but to do this, I will have to be assured of a goodly volume of trade. I enclosed you in my letter of the 10th a letter from the manufacturers indicating a general advance in prices and I should have to have your acceptance of this offer before the advance takes place.

"Yours truly,            F. H. Dyckman."

At the foot of the last letter the president of said company wrote the following:

"Renewal of present contract with same guarantee accepted April 19, 1899, for two years for same number of square feet of different kinds of glass.

"W. S. Webb, President."

Said company continued to order glass pursuant to the arrangement thus made until December 31, 1899, when it dissolved. In the glass trade there were standard, uniform price lists for the various kinds and sizes of glass, and it was the custom of the trade to sell according to said lists, giving varying discounts therefrom.

The referee was of the opinion that the agreement was not capable of being understood without resort to parol testimony respecting the kinds, qualities, and sizes of glass contracted for, and especially respecting the prices to be paid. It is plain that the transaction involved in this suit was at least the attempted renewal of a contract then existing between the parties, and it is not disputed that reference may be had to such contract which is evidenced by the two letters first quoted supra. It is difficult to discover anything ambiguous in said letters. To be sure, trade terms are employed which can only be understood by resort to trade usage, but in the light of such usage they are plain. The plaintiff's assignor offered to furnish said company the glass required by it during the next ensuing 12 months at a stated discount for the various kinds, which, when read in the light of trade usage, meant a discount from the standard, uniform price lists. Can there be any doubt that the written acceptance of this offer created a definite contract? Is there any doubt that the parties understood the terms employed by them? As disclosed by this record, this contract was performed without the slightest misunderstanding in respect of any of its terms, a single question having arisen respecting certain sizes and qualities used by said company not specifically mentioned in the letters referred to, which was adjusted by correspondence and incorporated into the contract then being performed. There can be no doubt that the parties understood the alleged second contract and performed it up to the time of the dissolution of said company, and it seems plain to me that by it plaintiff's assignor agreed to furnish and the said company agreed to take all of the glass of the various kinds, sizes, and qualities that the latter should require during the two years next ensuing after the termination of the contract then being performed, to be at least equal in quantity to the number of square feet of the various kinds that the latter had used under the existing contract, at "present prices," unless there should be reduction in the trade prices, and in that event that the prices to said company were to be reduced accordingly. It seems plain that the expression "present prices" meant the standard uniform list prices then prevailing, less the discount specified in the letter of June 14th; and I am unable to discover anything indefinite in the provision respecting a possible reduction in prices. The plaintiff's assignor agreed that there should be no increase, and that, in the event of a decrease in said standard prices, he would furnish the glass at said decreased prices, less, of course, the discount hereinbefore referred to. If these writings do not supply every element of the contract so as to show the complete understanding and intention of the parties, I am unable to understand the language employed. Many cases are cited in the opinion of the learned referee, and by counsel, to sustain the

judgment appealed from, upon the general proposition that the writing must contain the complete agreement of the parties so that every essential part thereof and the full intention of the parties can be gathered from it without resort to parol evidence. It is unnecessary to analyze these cases in detail because the rule referred to has long been settled law. No case, however, is cited upon the proposition that agreements required by the statute of frauds to be in writing are not to be construed like other agreements; on the contrary, there is late and controlling authority upon the proposition that such contracts are subject to the ordinary rules of construction. Seymour v. Warren, 179 N. Y. 1, 71 N. E. 260. Such contracts are to be construed with reference to the circumstances surrounding the parties (Hagan v. Domestic Sewing Machine Co., 9 Hun, 73), and trade terms may be explained by parol evidence (Dana v. Fiedler, 12 N. Y. 40, 62 Am. Dec. 130). The two cases last cited supra are referred to with approval by Cullen, J., in Brauer v. Oceanic Steam Navigation Co., 178 N. Y. 339-345, 70 N. E. 863. The error of the learned referee resulted from confusing an essential element of the contract not expressed in the writing with an expression found therein requiring explanation. In the former case the missing element cannot be supplied by parol, but in the latter case the court will put itself in the position of the parties for the purpose of understanding the agreement made by them. The statute of frauds is satisfied if every element necessary to constitute a binding contract is put in writing. Suppose the parties had agreed; the one to sell and the other to buy, at the market prices obtaining, whenever the orders should be given, can it be doubted that the agreement would be good? If the parties can make such an agreement, the statute of frauds is satisfied when it is evidenced by a memorandum signed by the party to be charged. The fact that resort would have to be had to parol proof to determine the market prices would not affect the validity of the contract or the sufficiency of the writing, so that it embodied every essential element of the contract.

I think the judgment should be reversed.

Judgment reversed, and new trial granted, costs to abide the event. HOOKER and GAYNOR, JJ., concur. HIRSCHBERG, P. J., and RICH, J., vote to affirm upon the opinion of the referee.