## SPIEGEL v. LOWENSTEIN.

(Supreme Court, Appellate Division, Third Department.　May 6, 1914.)

1. APPEAL AND ERROR (§ 927*)—DISMISSAL OF COUNTERCLAIM—REVIEW.

The court, in reviewing a judgment of dismissal of a counterclaim, will give defendant the benefit of every fact which the jury could have found from the evidence and all inferences warranted thereby.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024;　Dec. Dig. § 927.*]

2. FRAUDS, STATUTE OF (§ 103*)—SALE OF PERSONALTY—MEMORANDUM—SUFFICIENCY.

The memorandum required by the statute of frauds need not of itself constitute a contract, and any writing signed by the party sought to be charged, whereby he admits that he has entered into an agreement, is sufficient, and the memorandum may consist of letters or other writings so connected by their contents as to constitute a memorandum for the sale of personalty.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 192–198, 200–208;　Dec. Dig. § 103.*]

3. FRAUDS, STATUTE OF (§ 103*)—SALE OF PERSONALTY—MEMORANDUM—SUFFICIENCY.

A written contract of purchase of merchandise of a specified quantity and for a specified price on "usual terms" satisfies the statute of frauds, and the meaning of the quoted term may be shown by parol.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 192–198, 200–208;　Dec. Dig. § 103.*]

4. FRAUDS, STATUTE OF (§ 103*)—CONTRACTS—CONSTRUCTION.

A contract in writing, as required by the statute of frauds, is subject to the ordinary rules of construction.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 192–198, 200–208;　Dec. Dig. § 103.*]

5. FRAUDS, STATUTE OF (§ 103*) — SALE OF PERSONALTY — CONTRACT — SUFFICIENCY—"MEMORANDUM OF SALE."

A contract for the sale of merchandise was made orally by telephone communications.　The buyer by letter confirmed the conversation and stated the quantity of merchandise purchased and the price.　The seller by telegram canceled the order.　The buyer replied by telegram that he could not comply with the request to cancel and that he had written. The seller wrote that he had ordered a cancellation by telegram, but that if he had the merchandise the buyer would obtain it, but as the seller did not have it he could not send it, and in response to the buyer's letter stated that he expected a large lot of merchandise, but did not have it, and when he got it he would let the buyer know.　Held, that the letters and telegrams considered together constituted a "memorandum of sale" within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 192–198, 200–208;　Dec. Dig. § 103.*

For other definitions, see Words and Phrases, vol. 5, pp. 4472, 4473; vol. 8, p. 7720.]

Kellogg, J., dissenting.

Appeal from Trial Term, Chemung County.

Action by Wolfe M. Spiegel against Benjamin Lowenstein.　From a judgment for plaintiff, and a dismissal of the counterclaim of defendant, he appeals.　Reversed, and new trial granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Frankenthaler & Kaufmann, of New York City (Alfred Frankenthaler, of New York City, and E. W. Personius, of Elmira, of counsel), for appellant.

Lewis E. Mosher, of Elmira, for respondent.

LYON, J. The serious question involved upon this appeal is whether the communications by letter and telegram which passed between the parties hereto, following the making of a verbal contract for the sale and delivery by respondent to appellant of personal property exceeding $50 in value, were sufficient to render the contract valid under the statute of frauds. The answer admitted the cause of action set forth in the complaint, but pleaded as a counterclaim damages to the amount of $1,672.50 by reason of the failure of the respondent to deliver to the appellant 25 tons of copper wire, and 18 tons of brass and bronze turnings, which appellant claimed to have verbally purchased of respondent March 20, 1912. The reply denied the allegations of the counterclaim, and as a separate defense pleaded the statute of frauds. At the close of appellant's evidence the respondent moved for a dismissal of the counterclaim, upon the grounds that the evidence was insufficient to establish the authority of respondent's son to make the sale, and that the conversation by telephone and the subsequent letters and telegrams which passed between the parties were not sufficient to satisfy the statute of frauds. The court granted the motion upon the latter ground, and directed a verdict for the respondent for the amount demanded in the complaint, and it is from the judgment entered thereon that this appeal has been taken.

It appears from the record that on March 20, 1912, the respondent, whose office was in the city of Elmira, and between whom and the appellant dealings had been had from time to time in turnings and copper wire, wrote the appellant, whose office was in the city of New York, asking the best price the appellant could pay for brass turnings and manganese bronze. Upon receiving the letter the following morning, appellant's son called respondent's office by telephone, and, respondent being absent from the city, a conversation was had between respondent's son and appellant's son, in which, after some negotiations as to price, it was agreed that respondent should sell appellant one car load of turnings for $8.65 per 100 pounds, and 25 tons of copper wire, which respondent's son said respondent had for sale, at $13.25 per 100 pounds, f. o. b. Elmira, usual conditions and terms; the term of credit upon the previous sale, as shown by the complaint and conceded, and as appears from the evidence, having been 30 days. Immediately following this conversation appellant wrote and mailed a letter as follows:

"March 21, 1912.

"Mr. W. M. Spiegel, Elmira, N. Y.—Dear Sir: Confirming long-distance telephone conversation which the writer had with Mr. Spiegel, Jr., we herewith beg to confirm purchase from you of 25 tons clean heavy copper wire at 13¼ c. per lb.; also one car load containing the usual quality of #1 yellow brass turnings and bronze turnings at $8.65 per 100 lbs. f. o. b. cars Elmira, prompt shipment, usual terms. Please ship the car load of copper consigned

to the Tottenville Copper Co., Tottenville, S. I., N. Y., sending invoice and other particulars, as usual, direct to this office. Please ship the car load of turnings routed to New York City via Erie, as usual."

Also, immediately following said conversation, respondent's son, who, as is indicated by the following letter, had told the respondent by telephone of such conversation, telegraphed the appellant:

"*Cancel order for* turnings and *copper wire* as same has been disposed of by my father.                                                      M. F. Spiegel."

To which appellant immediately replied by telegram:

"Cannot comply with your request. Have written."

In the letter of that day, written to the son, appellant stated that he would consent to the cancellation of the purchase of the car load of brass and bronze turnings, but would not consent to cancel the purchase of the copper wire. On the same day, March 21st, respondent wrote appellant:

"When I arrived home at 6:50 p. m., my boy, who is about 18 years old, told me that you called him up by telephone and *he made you a price on* brass turnings and *copper wire.* Now, you know how youngsters are; they do not consider things when they speak. He knew well when he spoke to you that I had not purchased the turnings, but went down to see about getting them, but did not get them. Somebody else got them this time. After my boy spoke to you, he called me up by telephone and told me about it, and *I told him to telegraph you at once to cancel this order,* and explanation would follow. I assure you, if I had got the turnings, you would get them, no matter how cheap *he had sold them to you;* but I did not get them, therefore I cannot send you what I have not got."

On March 22d respondent wrote appellant:

"I received your letter and note what you state regarding the copper and also the brass turnings. I have written you yesterday to the fact. When I asked you about prices for brass turnings on the 20th, I was notified by my parties that they were ready to dispose of the lot of turnings, and to be sure that I would give them the right price and not lose the purchase I asked you for price, so that I could base my quotation according to your price. I was called out of the city yesterday, the 21st, and did not leave any authority to any one to sell anything or give any prices to any one for any stock. I never thought or dreamt that a youngster would think of any such a thing as to stand at the telephone and *make prices* and *sell goods* which I have not got. When I asked my son about it and gave him a calling down, he said he was just having fun; but I do not feel that way. I will ask you the next time, if you want to speak to me, do not speak to any one else. I also gave the telephone operator a calling down for allowing my boy to speak instead of myself. They have had such orders before, but she stated to me that she told you I was out of the city and you said any one will do. You know how youngsters of 18 are. They think they know everything, but they don't know nothing; therefore I will ask that you will have no hard feelings on this account. I expect a large lot of copper in, but have not got it yet, and when I get it I will let you know. I have no fault to find with you. I am pleased with our dealings, and am sorry that this happened."

To this letter appellant replied March 23d, insisting upon having the copper wire, and saying:

"We note your statement that you expect to receive a large lot of copper, and we see no reason why this contract cannot be filled with that large lot."

On March 28th appellant wrote respondent:

"As regards your request for check, beg to state that we cannot do anything further relative to your account, until we know your definite decision in regard to filling your contract obligations which you have with us."

To this letter respondent replied March 29th:

"Your letter of March 28th to hand, and note what you say in regards if I will fill the order which you have with me. You have no order with me. All orders which you had with me were filled. I have written you a letter and explained in regards to some transaction which you had with a boy of 18, Milton F. Spiegel. The telegram was signed by Milton F. Spiegel, and *he done business with you* which I did not know anything about. If you have any claim, collect it from M. F. Spiegel. You cannot find any acknowledgment or acceptance from me."

Following the refusal of appellant to pay respondent's claim, without allowance being made by respondent on account of the purchase of the copper wire, this action was brought.

[1] As to the authority of respondent's son to make the sale, we think the evidence was sufficient to warrant the submission of that question to the jury, and hence we must assume that the jury would have so found, as in reviewing a judgment entered upon the dismissal of a counterclaim, as in reviewing a judgment entered upon a nonsuit, the appellant is entitled to the benefit of every fact which the jury could have found from the evidence, and to all inferences warranted thereby. The respondent is therefore upon this appeal to be held chargeable with the acts of his son in connection with the alleged sale.

[2] As to the merits of the defense of the statute of frauds, it was not the intention of the statute to require that the memorandum should of itself constitute a contract, as it was required to be signed only by the party to be charged. Had such been the intention, the statute would have declared that all such contracts should be void unless in writing. The purpose of the memorandum is to serve as an acknowledgment or admission in writing of the person to be charged that such a contract has been made. The statute does not brand the verbal contract as illegal but simply says the verbal contract shall not be enforceable by action, unless there be some note or memorandum thereof in writing, signed by the party to be charged. It matters not how informal or bunglingly constructed the memorandum may be. Anything under the hand of the party sought to be charged, admitting that he had entered into the agreement, will be sufficient to satisfy the statute, which was only intended to protect parties from having parol agreements, dependent upon human recollection and veracity, imposed upon them. Wood on Statute of Frauds, § 345. The simple statement referring to the contract contained in a letter signed by the party to be charged, "I made the contract for the goods," is sufficient. Baily v. Sweeting, 30 L. J. C. P. 150. It is not necessary that such note or memorandum be contained in a single paper, but it may consist of several letters or other writings so connected by their contents as to constitute a note or memorandum for the sale of the property. All that is required is that the writings sufficiently evidence the contract of the parties. If the writing refers to letters or other documents, they may be used as a part of the memorandum; but, taken as a whole, they must contain all the

essentials of the contract, so that resort need not be had to parol proof: Brauer v. Oceanic Steam Navigation Co., 178 N. Y. 339, 70 N. E. 863; Doughty v. Manhattan Brass Co., 101 N. Y. 644, 4 N. E. 747; Mentz v. Newwitter, 122 N. Y. 491, 25 N. E. 1044, 11 L. R. A. 97, 19 Am. St. Rep. 514; Spencer Turner Co. v. Robertson, 55 Misc. Rep. 280, 105 N. Y. Supp. 98; Abbott's Trial Evidence, pp. 358, 359.

[3] In the case at bar the terms of the contract were explicitly stated in appellant's letter of March 21st. The expression, "usual terms," as applied to the terms of payment was as to the sale and delivery of copper wire by respondent to appellant the preceding month, which was the cause of action specified in the complaint, admittedly cash at the end of 30 days.

A contract for printing and binding, in which the rates are expressed as "current rates," does not create the contract an invalid one, under the statute of frauds, although the rates must be established by parol proof. Argus Co. v. Mayor, etc., City of Albany, 55 N. Y. 495, 14 Am. Rep. 296. An agreement to furnish glass at "present prices," and in the event of any reduction in glass prices by the trade generally to modify prices accordingly, satisfies the statute. Flash v. Rossiter, 116 App. Div. 880, 102 N. Y. Supp. 449.

[4] Contracts required by the statute of frauds are subject to the ordinary rules of construction. Seymour v. Warren, 179 N. Y. 1, 71 N. E. 260.

[5] In considering the merits of the question involved upon the appeal, it is proper to assume, as bearing upon the construction to be given respondent's letter of March 22d, that at the time of writing the letter respondent had full knowledge of all the facts relative to the sale of the turnings and copper wire, as he states in his letter of the 21st that his son called him up by telephone and told him about it, whereupon he directed his son to telegraph appellant at once to cancel the order, which occurred in the forenoon, and also that, when respondent reached home in the early evening, his son again told him of the conversation by telephone, and that he had made appellant a price on brass turnings and copper wire. That the respondent then had knowledge that his son had made a sale is also apparent from his statement in his letter of the 21st that his son *had made a price* on brass turnings and copper wire, and that the respondent had directed the son to cancel the *order,* and to the statement, "I assure you if I had got the turnings you would get them, no matter how cheap *he had sold them* to you." Viewed in the light of respondent's knowledge of these facts, the telegram and respondent's letters of the 21st and the 22d constituted a sufficient memorandum of sale to relieve the contract from the condemnation of the statute of frauds.

The letter and telegram of respondent of March 21st acknowledge that a price was made on the turnings and copper wire, that the offer was accepted, and that the transaction was recognized by both parties as a sale or accepted order; but the writings, being silent as to the subject-matter and terms of the contract, were insufficient to constitute a note or memorandum adequate to relieve the transaction from the operation of the statute of frauds. However, when on the following day,

in answer to appellant's letters of the 21st stating the particulars of the verbal contract, respondent wrote appellant the letter of March 22d, in no way denying the making of the contract or disputing the terms thereof, as fully stated in appellant's letter, and placing his claim to exemption from liability upon the contract, not upon the ground that no sale had been made, but solely upon the ground of lack of authority in his son to make the sale, and expressly acknowledging that his son had *made prices* and *sold goods,* and referring to respondent's letter of the 21st saying, "I have written you yesterday to the fact," I think that respondent's letter of March 22d, taken in connection with the letters of respondent and appellant, and respondent's telegram of March 21st, constituted a sufficient memorandum to take the case out from under the statute of frauds.

A case in many respects singularly like the case at bar is that of Poel v. Brunswick-Balke-Collender Co., 159 App. Div. 365, 144 N. Y. Supp. 725, in which, following a parol contract entered into between the agents of the respective parties, the plaintiffs prepared, signed, and mailed to the defendant, in April, 1910, a memorandum, designated "contract," stating the quantity of rubber sold by plaintiff to defendant, the date and place of shipment, and the price and method of payment. Upon the receipt of this contract the defendant filled out and signed one of its order blanks, stating quantity of rubber purchased, and price and time of shipment, and sent it to the plaintiffs, which plaintiffs claim they returned for the reason that it contained a strike clause. Thereafter defendant, on January 7, 1911, wrote a letter to plaintiffs, stating that there had come to defendant's attention information as to certain transactions had by its agents with plaintiffs, "and especially *as to a transaction* in April last relating to 12 tons of crude rubber." The letter then states that the agent had no authority to effect the transaction, and that the defendant should not recognize it. The court held, entirely disregarding the order blank sent by defendant to plaintiffs, that this letter, written for the purpose of disclaiming liability, taken in connection with the contract received from plaintiffs, clearly recognized that a *transaction* had been *effected* between defendant's agent and plaintiffs for the purchase of articles originally contracted for by parol, and constituted a sufficient memorandum signed by the defendant under the statute of frauds. The court in that connection says:

"But we do not deem it an extension of that doctrine to hold that on these facts the defendant admitted by its letter of January 7, 1911, that the contract evidenced by the original of Exhibit 3, which it was competent to identify by parol evidence, as has been done, had been negotiated between the defendant's agent, Rogers, and the plaintiffs, and on that theory, notwithstanding the fact that the letter was written for the purpose of repudiating liability, it, taken with the original of Exhibit 3, constitutes a sufficient memorandum signed by the defendant within the statute of frauds. Raubitschek v. Blank, 80 N. Y. 478; Thompson v. Menck, 4 Abb. Dec. 400; Beckwith v. Talbot, 95 U. S. 289 [24 L. Ed. 496]; Smith v. Colby, 136 Mass. 562; Cave v. Hastings, L. R. 7 Q. B. Div. 125; Long v. Millar, L. R. 4 C. P. Div. 450."

While this case was decided under the provisions of section 31 of the Personal Property Law as it existed in 1910 (Consol. Laws, c. 41; Laws of 1909, c. 45), entitled "Agreements Required to be in

Writing," commonly known as the "statute of frauds," the repeal of the portion of that section applicable to the case at bar, and its re-enactment as section 85 of the Personal Property Law, upon the adoption by the state of New York of the Uniform Sales Act, and its incorporation into the Personal Property Law (Laws of 1911, c. 571), made no change which in any way affects the case as an authority upon the question involved upon this appeal.

The case of Wilson v. Lewiston Mill Co., 150 N. Y. 314, 44 N. E. 959, 55 Am. St. Rep. 680, referred to by respondent, is not applicable, for the reason that the facts disclosed did not constitute plaintiff's salesman the agent of the defendant, so as to make his letter to the plaintiff, transmitting defendant's bid, the memorandum required by the statute of frauds of the state of Maine, and that the letter written by defendant was not a recognition of the contract, as, while it referred to plaintiff's communication, it did not admit the making of the contract therein alluded to.

We think the trial court was in error in holding as matter of law that under the evidence the contract was invalid under the statute of frauds, and in dismissing the counterclaim.

The judgment appealed from should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except KELLOGG, J., who dissents.