GLENS FALLS LUMBER COMPANY, INC., Respondent, *v.* JOSEPH T. RYERSON & SON, Appellant.

Third Department, December 28, 1916.

Statute of Frauds — contract — sale — goods over fifty dollars in value — written offer to sell met by counter proposal of buyer — correspondence not establishing written contract.

Where a vendor of goods submitted to a customer an offer in writing to furnish metal of certain specified dimensions at certain prices similar to a sample submitted, f. o. b. at seller's mill and on specified terms of payment, but the customer, instead of accepting the offer, gave a written order for a larger quantity of goods of different sizes and upon different terms of payment, delivery to be made f. o. b. at vendee's place of business and to be similar to a sample submitted by it, there was no binding contract in the absence of an acceptance of the vendee's proposal by the vendor, for the new terms and conditions imposed by the former were equivalent to an absolute rejection of the original offer of the vendor.

Moreover, the fact that the customer in the counter proposal stated that the vendor "may enter our order" for the following goods, indicated, not a positive order, but a permission or option of the vendor to accept the same.

The written correspondence aforesaid does not constitute a written con-
tract for the sale of goods over fifty dollars in value as alleged in the
vendee's complaint in an action for breach of contract and it was error
for the court to render a decision for the plaintiff where the defendant
had set up the defense of the Statute of Frauds.

APPEAL by the defendant, Joseph T. Ryerson & Son, from a
judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Warren on
the 24th day of July, 1916, upon the decision of the court after
a trial before the court, a jury having been waived.

*Taylor, Jackson & Brophy* [*Charles B. Brophy* of counsel],
for the appellant.

*James McPhillips* and *C. E. Fitzgerald*, for the respondent.

WOODWARD, J.:

The parties hereto are corporations, the plaintiff a domestic
corporation and the defendant a creature of the laws of Illi-
nois, though having a branch office and doing business within
this State. The complaint alleges for a cause of action, aside
from the formal averments, that "on or about the 24th day of
June, 1915, at the city of Glens Falls, N. Y., the plaintiff and
the defendant entered into an agreement in writing whereby it
was mutually agreed between them that the defendant should
sell and deliver to the plaintiff, f. o. b. at Glens Falls, N. Y.,
on or before September 1, 1915, ten thousand pieces ✕ 20
gauge 16″x18⅝″ shovel steel as per sample submitted, and
also four thousand lineal feet ✕ 24 gauge 14″ shovel steel as
per sample submitted," and that the plaintiff should accept the
same from the defendant and pay therefor the sum of $3.50 per
100 pounds for No. 20 gauge steel and $3.25 per 100 pounds for
No. 24 gauge steel. The complaint further alleges that plain-
tiff was at all times ready to accept and pay for the steel and
that the defendant neglected and refused to deliver the same,
to its damage in the sum of $1,000. The court, without a
jury, has found facts and reached conclusions of law holding
the defendant liable in the sum of $729.52, and the latter
appeals from the judgment entered upon this decision.

The defendant answering denies the material allegations

of the complaint and sets up the Statute of Frauds as an affirmative defense, the amount involved being in excess of fifty dollars. There is no dispute that the defendant has not performed the alleged contract, and the primary question to be determined here is whether the evidence establishes the making of an agreement such as is alleged in the complaint, for if no contract in writing was in fact entered into there can be no room for the application of the Statute of Frauds, and it will not be necessary to consider the affirmative defense.

On the 19th day of June, 1915, five days prior to the time of the alleged agreement, the defendant wrote a letter to the plaintiff as follows, omitting the formal parts:

"GENTLEMEN.— In line with our recent telephone conversation we now have figures complete and offer you the following:

"Sheets for shovels as per sample submitted 10,000 pieces ✳ 20 gauge 16″x18⅝″ at $3.50 per 100 ✳.

"3,000 to 4,000 li. ft. ✳ 24 gauge, 14 by approximately 10 ft. — $3.25 per 100 ✳.

"F. o. b. mill with freight allowed to Glens Falls, N. Y.

"Shipment in 10 days to 2 weeks.

"Terms: 2% for cash, 10 days, 30 days net.

"Thanking you for the opportunity to quote and hoping to be favored, we remain," etc.

Clearly this did not constitute a contract; it was merely an offer to deliver certain goods at certain prices upon certain conditions. It could become a contract in writing only by an acceptance of the exact proposition; a proposal to accept the offer if modified or an acceptance subject to other terms and conditions was equivalent to an absolute rejection of the offer made by the defendant. (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310, 319, and authorities there cited.)

On the 24th day of June, 1915, the plaintiff wrote a letter to the defendant, using the following language:

"You may enter our order for the following Spring Steel, to be in every way the same as sample you sent us of which we are sending you a small piece:

"10,000 pcs. ✳ 20 gauge 16″x18⅝″ at $3.50 per hundred lbs.

"5,000 pcs. ✳ 20 gauge 13″x14″ at $3.50 per hundred lbs.

"5,000 lin. ft. ✗ 24 gauge 14″ wide at $3.25 per hundred lbs.

"2,500 lin. ft. ✗ 24 gauge, 11″ wide at $3.25 per hundred lbs.

"The 24 gauge steel may come in 6, 8 or 10 foot lengths.

"All of this steel is to be the same as sample sent.

"Terms 2% ten days or net 30 days on arrival of car.

"Make shipment so that it will reach us between August 15th and September 1st.

"These prices are all f. o. b. Glens Falls, N. Y."

This was not an acceptance of the terms proposed in the defendant's letter of June nineteenth; the amounts and sizes are not the same, but are largely increased and varied; the terms of payment, instead of being " 2% for cash, 10 days, 30 days net," were to be " 2% ten days or net 30 days on arrival of car," and the terms of delivery were changed from " f. o. b. mill with freight allowed to Glens Falls, N. Y.," to "f. o. b. Glens Falls, N. Y.," which makes a very substantial difference. In the one case the delivery is complete when the goods are placed upon the car at the defendant's plant, and the time of payment begins to run, while in the other the delivery is not completed until the car reaches the plaintiff, and the time of payment does not begin to run until the car is actually there. This was a rejection of the defendant's offer of June nineteenth, if it had any relation to the offer at all, and it is to be noted that the plaintiff's letter is not in form a positive order, but a permission to "enter our order for the following Spring Steel, to be in every way the same as sample you sent us of which we are sending you a small piece." The permission to "enter our order" clearly contemplated that the defendant had an option of entering the order or of refusing to do so, and the requirement that the steel should be "in every way the same as sample you sent us of which we are sending you a small piece" of necessity involved the right of the defendant to determine what sample it had sent, and whether the small piece which was inclosed was a part of such sample, and whether it was in a position to furnish the required quality and quantity. This was evidently the view of the plaintiff, for on the 6th day of August, 1915, it wrote the defendant: "We are very anxious to get this business closed up as we told you pre-

viously that we must have the steel here by August 15th. We have orders to fill for that date and only have a very small amount of shovel steel in stock, so you can see our position in waiting for you any longer in this matter. * * *. Your letter is not at all satisfactory in any way. It does not give me any more definite information whether you are going to furnish the goods or not. Gentlemen, I have given you every opportunity to furnish goods as you agreed, and have waited very patiently for you. We would have placed our order on Tuesday except for your telephone call. Now, I will wait until Monday, *but not closing satisfactorily with you for our requirements* with an assurance that it will be shipped, we will place our order with people who will furnish our goods like what we require." Continuing, the plaintiff says: "If there is any further question about your trying to furnish us with something different from the sample which you sent in the first place, we wish you would come right out and say so, so that we will not have any further controversy over this order as we have not the time to be waiting and bothering through the mail in this manner any further. Please give this your immediate attention and advise."

It must be obvious that up to this time the plaintiff did not contend that it had got "this business closed up;" that the defendant had entered its order for goods made on the twenty-fourth of June; that there was on this sixth day of August any contract in writing between the parties. On the seventh day of August the defendant wrote the plaintiff, supplementing its letter of August fifth, in which the plaintiff is told that "we have just received a day letter from the mill regarding this, in which they state that they do not have on hand at the present time any 40 point carbon sheet bars from which they could furnish any more samples and as they do not have any tonnage on their books at the present time for this class of material, they cannot advise definitely as to when they could get out some more samples." This letter then states the result of an analysis of the sample originally sent, and says: "The fact that the sample which you returned to us showed such an extreme variation in phosphorus and sulphur is con- clusive evidence that the material was not of a sheet mill pro-

duction, but was of a crucible steel or spring steel production. Therefore, we are inclined to believe, and we believe that you will agree with us, that the sample which you tested and which proved satisfactory was a sample of spring steel made by the crucible steel process and not the sample which we were quoting on, namely, 30 to 40 carbon, a sheet steel."

It will be recalled that the order which the defendant was authorized to enter was "the following spring steel," to be in every way like the sample, whatever that sample may have been, while the defendant's letter of June nineteenth referred to "sheets for shovels as per sample submitted," but whether this was spring steel or sheet steel does not appear, and a perusal of the correspondence between the nineteenth day of June and the seventh day of August, when the letter last above considered was written, shows that there was a continued controversy as to what kind of materials the plaintiff's order contemplated. We are now in a position to understand the remaining language of the letter of August seventh, where the defendant says: "We believe this mistake has been caused by an error, and was not at all premeditated, and we believe that rather than delay your obtaining your stock any longer by waiting for samples and further details before final entry, that it would be best for all concerned to consider this first order cancelled. * * * We hope that you will pardon us for the evidently lax manner in which this order has been handled, but assure you that it has only been caused by our endeavors to be sure that you obtain the proper material for your work."

That is, the plaintiff's written order, very different from the defendant's offer of materials, called for "spring steel" in all respects like a certain sample furnished by the defendant, a small piece of which was forwarded with the order. The defendant from time to time wrote the plaintiff and sent samples of materials, which the plaintiff rejected as not up to the standard of the sample submitted, and six days before the date fixed in the plaintiff's order as the earliest date for receiving the materials, finally rejected the order; it refused to enter the same as authorized by the plaintiff, and the minds of the parties never met upon a contract such as is alleged in the complaint. That alleged contract contemplated only 10,000 pieces of the

twenty-gauge materials and 4,000 lineal feet of the twenty-four-gauge materials, these being the amounts mentioned in the defendant's letter of the nineteenth of June, which was rejected by the plaintiff, while the plaintiff's order of the twenty-fourth of June, which was finally rejected by the defendant, sought to secure 15,000 pieces of the twenty-gauge materials and 7,500 lineal feet of the twenty-four-gauge steel.

The plaintiff does not seriously contend that there was ever any written acceptance of the order of June twenty-fourth, but attempts to piece out the acceptance by testimony from which it is claimed the court might draw the inference that there had been an acceptance. But this clearly does not support the allegation of the complaint that on or about the twenty-fourth day of June the parties entered into a written agreement for the purchase of 10,000 pieces of twenty-gauge steel and 4,000 lineal feet of twenty-four-gauge steel, when the only writing made on the twenty-fourth day of June related to much larger quantities, upon different terms and conditions than those mentioned in the letter of June nineteenth. That letter was written by the defendant and the proposition was rejected; that ended that letter so far as the parties to this action are concerned, and an alleged acceptance of the plaintiff's order for other and different materials, upon different terms and conditions, cannot be said to have established the contract set forth in the complaint, even if we suppose that the fact of the alleged acceptance can be shown by parol evidence, where the complaint alleges that the contract was made in writing.

The case of *Spiegel* v. *Lowenstein* (162 App. Div. 443) does not afford any justification for the respondent's contention, especially since the reversal of the case of *Poel* v. *Brunswick-Balke-Collender Co.* (159 App. Div. 365; 216 N. Y. 310), upon which the court relied largely. In *Spiegel* v. *Lowenstein* (*supra*) there was undeniably a contract covering all the details in writing and this was recognized by the party charged; he simply sought to avoid a contract made by his son without direct authority, and the question of the son's authority was not submitted to the jury. It has nothing to do with the facts in this case, where the contract alleged is not proved even by parol evidence.

No writing being shown which establishes that the defendant entered into or accepted the order of June twenty-fourth, it must be evident that there is a complete failure to meet the requirements of the Statute of Frauds, and we are of opinion that *Poel* v. *Brunswick-Balke-Collender Co.* (216 N. Y. 310) is a sufficient authority to cite in support of the reversal of the judgment in this action.

The judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment reversed upon the law and facts and new trial granted, with costs to the appellant to abide event. The court disapproves of the findings of fact numbered seven, eight, nine and ten.