LEON MARKS, Respondent, *v.* JOHN E. COWDIN and EDWARD N. HERZOG (Sued Herein as EDWIN N. HERZOG), Appellants.

First Department, December 29, 1916.

Principal and agent — action to recover balance due under contract of employment and for wrongful discharge — "memorandum" within Statute of Frauds — erroneous charge — admissibility of evidence of acts of parties to explain contract.

Action for a balance claimed to be owing to the plaintiff for salary under a contract of employment for a term of years and for damages for an alleged wrongful discharge.

*Held,* on all the evidence, that a writing signed by the defendants and delivered to the plaintiff, together with his written acceptance thereof, constituted a sufficient "memorandum" within the Statute of Frauds.

That the court, after submitting to the jury, as a question of fact, to determine the nature of the services which the plaintiff was employed to render, committed reversible error in instructing them, as a matter of law, that the plaintiff was not obliged to perform any duties involving his taking orders from another employee who had been his subordinate;

That the defendants were within their rights under the contract in requiring the plaintiff to take orders from another employee who had been his subordinate, and that the complaint should have been dismissed.

The contract being silent with respect to the nature of the services which plaintiff was to perform, evidence of the acts of the parties thereunder was admissible to show the nature of the services for which he was employed.

APPEAL by the defendants, John E. Cowdin and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of December, 1915, upon the verdict of a jury, and also from an order entered in said clerk's office on the 9th day of December, 1915, denying defendants' motion for a new trial made upon the minutes.

*George L. Ingraham* [*William L. Cahn* with him on the brief], for the appellants.

*Henry L. Scheuerman* [*Morris J. Hirsch* and *Mortimer H. Hess* with him on the brief], for the respondent.

LAUGHLIN, J.:

The complaint contains two counts, one for a balance claimed to be owing to the plaintiff for salary under a contract of employment for three years from January 1, 1913, and the other for damages for a wrongful discharge on the 17th day of August, 1914. On the first trial of the action the jury disagreed. Prior to the second trial the defendants paid the plaintiff the balance owing for services rendered which consisted of a balance under the agreement for a percentage of the profits. On the trial now under review the court was of opinion that there was a question of fact as to whether the defendants had not breached the contract of employment by assigning to another employee a large part of the important duties assigned to the plaintiff during upwards of three years of his employment. The principal contentions of the learned counsel for the appellants on the appeal are that the court erred in not dismissing the complaint and in the reception of evidence and in instructing the jury.

The defendants were copartners engaged in the business of manufacturing and importing silk ribbons, and in selling the same to manufacturers of ladies' wearing apparel, and to retail and department stores throughout the United States, and in

First Department, December, 1916.    [Vol. 175.

their selling department they employed thirteen or fourteen traveling salesmen.

In December, 1905, the plaintiff entered the employ of Litt Bros., who conducted a department store in Philadelphia. He was their buyer and manager for the departments selling ribbons, ladies' neckwear, muslin, underwear, cloaks, infants' wear, children's wear, sweaters and waists. He was so engaged when, in the spring of 1910, the defendant Herzog sent for him to come to New York for an interview.

At that time the defendants had in their employ one Dinkelspiel who, under the supervision of the defendant Herzog, had had charge of defendants' foreign department, involving trips abroad to purchase goods; and when Herzog was abroad Dinkelspiel with defendant Cowdin and another employee assisted in making up the orders for the factory and in looking after the manufacturing work, and he was considered the head of the sales department. Dinkelspiel's services were unsatisfactory, and defendants were about to terminate his contract of employment by a six months' notice. The vacancy thus contemplated rendered it necessary for them to obtain the services of another.

The plaintiff came to New York city and had an interview with Herzog; and on the 13th of April, 1910, the defendants wrote him, confirming the verbal arrangement made between him and Herzog, saying: "It was agreed that you should come into our employ for two years beginning January 1st, 1911, at an annual salary of $15,000 00/100 Dollars. Furthermore if at the end of this agreement we are mutually satisfied you are then to become a partner in our firm when a new arrangement will naturally have to be made. As regards your coming to us on September 1st if you wish to do so on August 1st it will be perfectly agreeable to us, so as to enable you to get a grasp of our business on the lines we outlined in our last two meetings."

The defendants then contemplated giving Dinkelspiel the six months' notice about the first of July, and that he would remain with them until the end of the year, but on receiving the notice he left.

On the 6th of July, 1910, the defendants notified their travel-

ing salesmen in writing that the plaintiff would join their "force permanently as soon as possible. He will become our sales manager. You, no doubt, know him personally and know his record; we feel confident that with him in command we will not only keep up our business but will increase it to the largest dimensions." The plaintiff entered the employ of the defendants in the month of July, 1910, instead of on January 1, 1911. He was given a private office, and desk and a telephone in his own name. There is evidence, some of which, however, is controverted, tending to show that he took charge of the selling of defendants' merchandise, selected and passed upon the designs of ribbons, directed the character of goods to be manufactured, made numerous trips to Europe to purchase goods and to obtain ideas with respect to styles and designs, assigned the traveling salesmen and rearranged their territory, and under the supervision of the defendants renewed contracts with salesmen and engaged salesmen and employed and discharged stockroom help, visited the trade for the purpose of introducing salesmen and obtaining customers, called upon Marshall Field & Co. at Chicago, which was defendants' largest customer, installed new systems of records and correspondence, attended to the firm mail, and represented defendants in attending meetings of ribbon manufacturers. The defendant Cowdin, however, personally attended to matters of finance and purchased all raw material required. Herzog had charge of the practical conduct of the business.

The defendants having pleaded the Statute of Frauds, evidence with respect to a verbal agreement for a new employment for three years from January 1, 1913, was excluded. It was shown, however, that the plaintiff continued in the employ of the defendants without having become a partner and without any written contract of employment, performing like duties, receiving the same annual salary and five per cent of the profits, which was credited to his account monthly.

Shortly after January 1, 1913, the defendant Herzog became ill and was absent from the business until the latter part of October or fore part of November that year. During his absence the plaintiff performed part of the duties that had been theretofore performed by him.

First Department, December, 1916.    [Vol. 175.

According to the testimony of the plaintiff several of the traveling salesmen were dissatisfied with the manner in which they were treated by him; but he claimed that this was owing to a feeling of resentment on their part against his employment in a position to which they thought one of them should have been advanced; and at the end of 1912 two of them left the defendants' employ and engaged in business for themselves. About the end of November, 1913, on the plaintiff's return from a ten days' trip for his health, the defendant Cowdin informed him that the salesmen had entered complaint against him, and that it looked very much as if he would have to leave; and according to the testimony of plaintiff it was then agreed that he should receive a check for the amount owing him and $20,000 in addition thereto, and leave the employ of the defendants.

During the controversy arising out of the complaint of the salesmen the plaintiff consulted an attorney and evidently was advised that his verbal contract for employment for three years was invalid.

The defendant Cowdin, according to the testimony of the plaintiff, before this arrangement for his leaving was consummated, stated that he was wrong in asking plaintiff to leave; and requested plaintiff to continue as before, to which plaintiff assented; but plaintiff suggested that he should have a written contract, and stated that he had not requested it before on account of Herzog's illness. Plaintiff says that Cowdin thereupon agreed to have the contract reduced to writing; and at plaintiff's suggestion consented that plaintiff draft it, whereupon the plaintiff wrote on the billhead of the defendants, under date of December 22, 1913, the following: " It is understood between Johnson, Cowdin & Co. and Leon Marks that the arrangement made for employment of Leon Marks in our business on January first, 1913, for a period of three years from that date at a salary of $15,000.00 (fifteen thousand) per year plus five (5%) per cent of the gross profits earned in our business which we agree shall be not less than $5,000 00/100 per year — continues in force until Jan. 1st, 1916." He says that he then presented the writing to Cowdin, who signed it in the firm name and his own name, and that it was also

signed by Herzog. The defendants produced and the plaintiff offered in evidence a letter from him to them under date of December 30, 1913, as follows: "I beg to acknowledge receipt of letter 12/22/13, confirming my arrangement with you. It is understood that the words used in this letter of that date 'gross profit' to mean profit after deduction of expenses is made." After December 22, 1913, the plaintiff continued to perform like duties, visiting Marshall Field & Co. in January, 1914, and going to Europe on the 10th of March, 1914.

From that time on one MacLaren, who had been a salesman and subsequently head of the stock room, and was then and for some time had been the plaintiff's assistant, to a greater and greater extent performed some of the duties which had been theretofore performed by the plaintiff; and finally was given charge of the traveling salesmen, and to some extent was given authority over the plaintiff. The plaintiff ultimately became dissatisfied and insisted upon being reinstated in his former position and refused to take orders from MacLaren.

Plaintiff claims that the purpose of the defendants in thus advancing MacLaren was to force the plaintiff to sever his employment with them. There is, however, no evidence of this, and it cannot be inferred from the mere fact that the defendants increased the duties and authority of MacLaren; for the evidence tends to show that they deemed that the success of their business required it, owing to the fact that Marshall Field & Co., their principal customer, was dissatisfied with the plaintiff and refused to do business with defendants through him, and to friction between him and the salesmen, and that with a view to promoting harmonious action they assigned plaintiff to visiting the manufacturing trade with a view to building it up and increasing it, not, however, as a traveling salesman, but with salesmen under him.

On the 4th of August, 1914, the defendants notified the plaintiff in writing that they were reorganizing their various departments and had decided that he "should look after the trade consisting of manufacturing of Dresses, Waists, etc., and that [he] should see this trade regularly in the future," and further stated therein as follows: "The selling department

will be in the hands of Mr. MacLaren, and you will naturally report to him. We desire that this change should take place immediately and also that you vacate the office you now occupy and we will assign a desk to you elsewhere." The plaintiff complains that this so-called reorganization was determined upon by the defendants without consulting him; but manifestly, as he was not a partner, they were under no obligation to consult him with respect to any reorganization they saw fit to make to further the success of their business. The plaintiff replied to this letter the same day, expressing surprise, and claiming that he had entered the defendants' employ as "general manager of your business, succeeding Mr. Dinkelspiel;' and that he was willing to assist in any branches of the business, but that he "at the same time must preserve the dignity of the position" for which he had been engaged; and stated that the defendants could not expect him to consent to a change of his employment, "and above all," to being placed "in a subordinate position" to MacLaren, who had been one of his subordinates; and that he protested against being confined to looking after the trade exclusively; but stating that he entered "no objection to visiting this particular trade in connection with the performance of [his] general duties," and provided he was permitted to perform his duties "as general manager, as heretofore." To this letter the defendants replied two days later, denying that they engaged the plaintiff as general manager, and stating their claim with respect to his engagement as follows: "You were engaged, it is true, in a responsible position, but subject to our orders to take care of such parts of the business as we saw fit to assign to you." They also asserted that there was nothing undignified requested or expected of him; but they asserted the right to run the business in their own way; and stated that they had in the course of time assigned him to various departments; and reiterated that they were reorganizing the various features of their business. The plaintiff replied, arguing that he was entitled to continue in the performance of the duties theretofore performed by him, and saying: "I recognize your absolute right to direct me to perform any service which is within the range of my employment. I must

insist, however, that in view of the position which I have hitherto occupied that I am not called upon to place myself under Mr. MacLaren, and to accept any directions from him, he having hitherto always been subject to my directions in respect to the affairs of the business." He also in that reply asked whether the defendants intended to assign him to the duties of looking after the trade " to the exclusion of all other duties" which he had theretofore performed, such as traveling abroad to purchase merchandise and acquire styles, engaging help and superintending the sales department. The defendants answered that communication on August twelfth, denying the assertion made by the plaintiff in his last letter that his duties, if not those of a general manager, were akin to those of a junior partner; and stating that they would expect him to carry out their instructions given in their letter of the sixth of August; and stating specifically as follows: " Your duties for the present will be to see the trade manufacturing Costumes, Dresses, Waists and Underwear, and to sell to such trade our merchandise, consult with such trade as to their requirements in our line, and report results to Mr. MacLaren, who is in charge of our sales department." To this letter the plaintiff replied, asking for a statement of his account and saying: " I also must respectfully decline to assume the position to which you now seek to relegate me, to wit, to exclusively look after the trade consisting of manufacturing of dresses, waists, etc., regularly in the future. This is work which has always been performed by salesmen and not by those in a responsible position, such as I occupy, and for which I was engaged. Whenever I did see that trade in the past, it was upon my own initiative, seeking to use every spare moment in the development and increase of your business in every line, and I visited my friends in that trade and the trade generally whenever I had the time for the purpose of seeking to induce them to bring their patronage to our house." On the seventeenth day of August the plaintiff had an interview with the defendant Cowdin, and refused to perform the services to which he had been assigned; and thereupon the defendants notified him in writing that they considered that he had broken his contract, and that he need no longer report for duty, and handed him a statement of his account.

There is no force in the contention that the plaintiff did not show a valid contract within the Statute of Frauds. The writing signed by the defendants on the 22d of December, 1913, and delivered to the plaintiff together with his written acceptance thereof under date of December thirtieth, embodied all the terms of the contract and contained mutual promises of employment and the rendition of services by the respective parties and a recital of the consideration and, therefore, constituted a sufficient memorandum thereof within the Statute of Frauds. (*Peabody* v. *Speyers*, 56 N. Y. 230; *Hagan* v. *Domestic Sewing-Machine Co.*, 9 Hun, 73; *Seymour* v. *Warren*, 179 N. Y. 1; *Flash* v. *Rossiter*, 116 App. Div. 880.)

The learned court in submitting the case to the jury doubtless, inadvertently, fell into error, which in any event would require a reversal; for after submitting to the jury as a question of fact to determine the nature of the services which the plaintiff was employed to render, the jury were instructed as matter of law that the plaintiff was not obliged to perform any duties involving his taking orders from MacLaren, who had been his subordinate; and as it was undisputed that the defendants required him to take orders from MacLaren, that was equivalent to a direction of a verdict in favor of the plaintiff, leaving nothing for the jury to consider excepting the assessment of the damages.

We are of opinion, however, that the complaint should have been dismissed. Under the Statute of Frauds the plaintiff must stand on his contract in writing, which was written by himself, and which neither specifies the position in which he was employed nor the nature of the services, although it was written almost at the expiration of the first year of the second contract of employment. Doubtless this was not a general contract of employment in the sense that the defendants could have assigned the plaintiff to any work; but it was a contract under which the defendants were, I think, at liberty to assign the plaintiff from time to time to the various duties which he had been performing for them, or exclusively to any of such duties as in their judgment the interest of their business required. (See *Jerome* v. *Queen City Cycle Co.*, 163 N. Y. 351; *Macauley* v. *Press Publishing*

*Co.,* 170 App. Div. 640.) The difficulty with the plaintiff's case is that he has no valid contract for any particular position. (See *Hagan* v. *Domestic Sewing Machine Co., supra.*) It is quite clear, I think, that the defendants at the outset might have assigned him to the performance of any duties; and parol evidence would not have been admissible to supplement the contract and show that while the contract is silent on the subject, he was employed to perform particular services. (*Hagan* v. *Domestic Sewing Machine Co., supra.*) In the case at bar, however, the parties had placed a practical construction on a like contract under which he had worked for two years, and under this contract for upwards of a year and a half. The contract being silent with respect to the nature of the services which plaintiff was to perform, evidence of the acts of the parties thereunder was admissible to show the nature of the services for which he was employed. (*Hagan* v. *Domestic Sewing Machine Co., supra; Davis* v. *Dodge,* 126 App. Div. 469; *Seymour* v. *Warren,* 179 N. Y. 1; *Flash* v. *Rossiter,* 116 App. Div. 880.) Therefore, I think, if the defendants, after this practical construction of the contract, had assigned him exclusively to the performance of duties the performance of which they had not required of him before, he would have had just cause for complaint and would have been entitled to redress. Here, however, the plaintiff, having entered the employ of the defendants, evidently in the hope and expectation of becoming a partner, although there was no legal obligation on the part of the defendants to take him into partnership, appears to have thought that they were not at liberty to make any material change in the method of conducting their business without consulting him; and that notwithstanding the fact that in their opinion the interests of their business required that some one else be assigned to part of the duties which he had theretofore been performing, and perhaps the most important of those duties, still on account of the fact that they had permitted him to perform those duties for a time, they were precluded from assigning him exclusively to the performance of other duties of a nature which he had performed in part, but which he deemed incidental and of less importance than the duties they took from him. We are of opinion, therefore, that the

defendants were within their rights under the contract in requiring the plaintiff to visit the trade as directed, and to take orders from MacLaren; and the breach of the contract was on his part and not on theirs.

It follows that the judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., SCOTT, DOWLING and PAGE, JJ., concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.