THOMAS P. LERNED & another *vs.* CHARLES WANNEMACHER & another.

If an oral contract is made for the purchase and sale of goods, according to the terms and conditions expressed in a printed memorandum furnished by the seller, and appearing to contain the terms and conditions on which he undertakes to supply such goods, with a printed form of an order subjoined, and the paper is referred to in the terms and conditions as "this contract," and the purchaser fills up, dates and signs the order, and thereby requests the seller, on the above terms and conditions, to deliver at his place of business, o be shipped to the purchaser's place of business, a specified quantity of the goods, at a specified price and specified terms of payment, and agrees to send his own vessels, and reserves the right, after the first cargo has been shipped, to refuse the rest if not satisfactory, this is a sufficient memorandum of the contract, within the statute of frauds, to bind the purchaser. And if at the same time another similar paper is filled up in precisely the same way, signed by the seller, and delivered by him to the purchaser, though not containing the purchaser's name, the two papers may be taken together to exhibit the contract of the parties, and the seller may be bound thereby. Nor is the seller relieved from his liability by the fact that the purchaser afterwards signed on the back of the paper already signed by him an order for the goods to be shipped immediately, if the vessels were not sent.

CONTRACT brought to recover damages for the failure to de-liver a quantity of coal, sold by the defendants to the plaintiffs. One ground of defence was, that the contract was not binding because not executed in conformity to the statute of frauds.

At the trial in the superior court, before *Morton*, J., the plain-tiffs introduced evidence tending to show the following facts · Albert Betteley was authorized to sign contracts for the sale of coal, in behalf of the defendants, who were commission mer chants in Philadelphia, under the firm of Wannemacher & Max-field. On the 31st of March 1863 the plaintiffs made a parol contract for the purchase of one thousand tons of coal of Bet-teley, as agent of the defendants, according to the terms of the written memorandum hereinafter set out. The plaintiffs then signed and delivered to Betteley, as agent of the defendants, a memorandum of the contract, partly written and partly printed, as follows, the written parts being here put in Italics :

" Coal, when delivered on board of vessels, boats or barges, to be in all respects at the purchaser's risk; bills of lading, or other regular testimony of shipment, to be proof of such delivery, both as to time and quantity. Each cargo of coal to be settled for from time to time as delivered, in the mode specified in the con-tract. Captains of vessels sent by purchasers for their coal, to bring written orders, and take each his regular turn in loading. All possible despatch will be given in loading, but no claims will be allowed for demurrage, nor for the consequences of un-avoidable delay. No responsibility assumed as regards procur-ing vessels, boats or barges; but every exertion will be used to engage them. Every effort will be made for the fulfilment of this contract; but if prevented or obstructed by breaches, or other unavoidable occurrences, on the canals or railroads, or at the mines, or by combinations, strikes or turn-outs among miners, boatmen or laborers, no claim for damages will be allowed. Wannemacher & Maxfield, commission merchants, Philadelphia. *Boston, March* 31, 1863.

" On the above terms and conditions, please deliver on board, at your wharves at *Philadelphia*, to be shipped to *Cambridge-port, 10* feet of water, *7* bridges, *1000* tons . . . . . . . *Swatara ; 800 Stove, 200 Egg ; Swatara $4.50.*

" Terms cash, or approved paper at interest, added from date of bill of lading, or other proof of shipment; *United States tax to be added. We will send our own vessels. After first cargo is shipped, the purchaser has the right to refuse the balance if not satisfactory. T. P. Lerned & Son.*"

At the same time Betteley signed the name of " Wanne-macher & Maxfield, by Albert Betteley," to a memorandum precisely similar to the above in every respect, except that the name of the plaintiffs was not signed to it, and delivered the same to the plaintiffs. Two or three weeks afterwards Betteley, as agent of the defendants, wrote upon the back of the memorandum delivered to him by the plaintiffs these words : " To be shipped immediately, if vessels are not sent;" and the plaintiffs signed the same, and redelivered the memorandum to him. Both of the above papers were put in evidence by the plaintiffs, the one signed by them being produced by the defendants on notice. The price of coal subsequently increased in the market, and the defendants refused to deliver the said one thousand tons.

Upon the introduction of this evidence, the judge ruled that the action could not be maintained, and a verdict was accordingly taken for the defendants. The plaintiffs alleged exceptions.

*G. A. Somerby,* for the plaintiffs, besides cases cited in the opinion, cited *Brettel* v. *Williams,* 4 Welsb., Hurlst. & Gord. 623 ; *Jackson* v. *Lowe,* 1 Bing. 8; *Johnson* v. *Dodgson,* 2 M. & W. 653 ; *Tallman* v. *Franklin,* 14 N. Y. 584.

*C. A. Welch,* for the defendants. There was no sufficient memorandum of the contract in writing, signed by the defend-ants or their agent. The paper signed by Betteley is not and does not profess to be a memorandum of a bargain. The name of the plaintiffs is not contained in it ; there is no request to de-liver to any person in particular ; and there is no promise. The paper signed by the plaintiffs is simply a request by them ; there is nc acceptance by the defendants, and consequently no con-tract. ·The two papers cannot be taken together, because neither refers to the other; they do not harmonize in substance or form and they cannot be connected by parol. See *Morton* v. *Dean*

13 Met. 385; *Kenworthy* v. *Schofield,* 2 B. & C. 945; *Salmon Falls Manuf. Co.* v. *Goddard,* 14 How. 461; *First Baptist Church* v. *Bigelow,* 16 Wend. 28; *Talman* v. *Field,* 3 Duer R. 395; *O'-Donnell* v. *Leeman,* 43 Maine, 158. Even if the two papers can be taken together and harmonized by corrections, they make no sufficient memorandum of a contract. They show no assent or agreement on the part of the defendants. The fact of there having been any bargain on their part rests entirely in parol; and this is what the statute seeks to avoid. *Osborn* v. *Phelps,* 19 Conn. 63, 73. *Baily* v. *Ogden,* 3 Johns. 399, 400, 418. Besides; even if there were a sufficient memorandum, the contract shown thereby was subsequently changed by a paper, signed by the plaintiffs only, which constituted a new contract, capable of being enforced against the plaintiffs, but not against the defendants.

Hoar, J. The ruling to which exceptions were taken at the trial was this : that the plaintiffs could not maintain their action upon the contract set forth in the declaration, because it was a contract for the sale of merchandise for the price of more than fifty dollars, and there was no acceptance of any part of the goods, or giving anything in earnest to bind the bargain, or part payment, and no sufficient note or memorandum in writing of the bargain made and signed by the defendants, or by any person thereunto by them lawfully authorized. Gen. Sts. *c.* 105, § 5. And the question before us is of the sufficiency of the memorandum produced.

The first objection is, that neither the memorandum signed by the purchasers and delivered to the sellers, nor the counterpart signed by the sellers and delivered to the purchasers, contains in itself a complete statement of the bargain ; that there is nothing in the papers themselves by which they can be connected, and it is not sufficient to connect them by parol; and that if connected they are only orders, and do not amount to a contract.

On examining the memorandum retained by the sellers, which is signed by the plaintiffs, we think it is a complete memorandum of the bargain proved, and would undoubtedly have been sufficient in an action by the defendants against the plaintiffs.

It must be observed that the contract itself, and the memoran-
dum which is necessary to its validity under the statute of
frauds, are in their nature distinct things. The statute presup-
poses a contract by parol. *Marsh* v. *Hyde*, 3 Gray, 333. The
contract may be made at one time, and the note or memoran-
dum of it at a subsequent time. The contract may be proved
by parol, and the memorandum may be supplied by documents
and letters, written at various times, if they all appear to have
relation to it, and if coupled together, they contain by statement
or reference all the essential parts of the bargain, signed by the
party to be charged or his agent. *Williams* v. *Bacon*, 2 Gray,
387. Now it was proved by parol testimony that the contract
declared on was made orally by the defendants, through their
agent, with the plaintiff; and that the memorandum was de-
livered to the defendants by the plaintiffs as a statement of the
terms of the bargain. In the printed part, it is spoken of as
" this contract," and " the contract." It recites that " every
effort will be made for the fulfilment of this contract." It then
contains a request to the defendants to deliver the coal, " on
the above terms and conditions," " at your wharves at Phil-
adelphia " — the defendants' place of business — " to be shipped
to Cambridgeport" — the plaintiffs' place of business. The
quantity, price and terms of payment are then stated. It says,
" we will send our own vessels," an agreement to receive ; and
concludes with an option to " the purchaser" to refuse all but
the first cargo if that is not satisfactory. That there is a con-
tract, a seller, a purchaser, a thing sold, a price, a place of de-
livery, and terms of payment, all sufficiently appear. It is true
that part of the paper is in form an order ; but we can have no
doubt that, taking the whole together, it shows an agreement to
purchase. As was said by Mansfield, C. J. in *Allen* v. *Bennet*,
3 Taunt. 169, " The defendant's counsel distinguishes between
an order and an agreement to buy ; but if I go to a shop and
order goods do not I agree to buy them ? "

The only defect, then, is the want of the signature of the
defendants or that of their authorized agent. If this had been
the only paper executed, it would deserve serious consideration,

whether, if shown to have been made as a memorandum of a bargain concluded between the parties, delivered as such by the plaintiffs, and accepted as such by the agent of the defendants, the printed name of the defendants would not have been sufficient, upon the authorities, to answer the requirements of the statute as a signature by them. *Saunderson* v. *Jackson*, 3 Esp. R. 180; S. C. 2 B. & P. 238. But we do not put the case on this ground, because the counterpart of the contract, delivered by the defendants to the plaintiffs, is signed by them through their agent Betteley. As a separate paper, that is in its turn defective, by reason of not containing the name of the purchaser. But the two papers were prepared at one time, and delivered simultaneously as parts of the same transaction. The one produced by the plaintiffs is signed so as to charge the defendants. They gave to the defendants one by which they were themselves bound. The two show clearly, when construed by their own language as applied to the existing circumstances, which party was the seller, and which the purchaser. And we can see no reason upon principle or authority why they should not have the same effect, as if both the signatures were to the same paper. The intrinsic evidence which they afford that they refer to the same transaction is very strong, and competent for the consideration of a jury; and, in the absence of all proof that a precisely similar contract was made by either party with any other person, would be extremely cogent.

The case does not much resemble any of those cited for the defendants, in which the doctrine has been stated that when the memorandum is made out from several papers they must be shown upon their face to have a mutual relation to each other; and that this relation cannot be established by extrinsic evidence. This is the rule of the text books; 2 Kent Com. (6th ed.) 511; Browne on St. of Frauds, § 350; and its general correctness is well settled. *Morton* v. *Dean*, 13 Met. 385. Most of the cases to which we have been referred have been those of sales at auction, where the conditions of sale were not contained in or annexed to the memorandum which was signed. Here the whole terms and conditions of the bargain are stated alike in

the two copies of the memorandum, one of which is signed by each party.

There are, however, two specific objections which deserve attention. In each paper the statement is made, " We will send our own vessels ; " and as they are signed, one by the plaintiffs and the other by the defendants, it is urged that the meaning of the word " we " becomes uncertain, or that the two parts of the memorandum are made contradictory. Beside this, one part of the contract was altered by the additional agreement written by the defendants' agent and signed by the plaintiffs, " to be shipped immediately if vessels are not sent ; " and no corresponding alteration has been signed by the defendants.

The first difficulty seems to be capable of a satisfactory solution. The printed part of the memorandum clearly contemplates that the shipment of the coal is to be made in vessels to be furnished by the vendors ; although they assumed no respon sibility about the vessels except reasonable diligence in procuring them. The insertion of the written clause, " we will send our own vessels," could only be explained as importing a change in this respect. In the part of the contract signed by the plaintiffs, " we " would mean the purchaser. In the other part the phrase follows the expression " your wharves," when speaking of the wharves of the defendants ; and " we " is thus used in contradistinction from " you," the vendors. The agent of the vendors signs the paper ; but still, if not with perfect grammatical correctness of expression, it is sufficiently obvious that in using the word " we " he means the purchasers.

The additional clause written upon the part of the memorandum retained by the defendants presents a more difficult question, though it shows very clearly who were meant by " we " in the part of the contract just considered. But it is obvious that it was not meant to impair the contract which had been made. It is an additional stipulation to take effect upon a contingency which has not happened. The evidence showed that vessels were sent by the plaintiffs. And if the contingency had happened, it was only the substitution of a new mode of perform ance, of which the defendants or plaintiffs might have availed

themselves. even if made only by parol. *Cummings* v. *Arnold*, 3 Met. 486. *Stearns* v. *Hall*, 9 Cush. 31. If it were not binding on the defendants, because no memorandum of it was signed by them, it could not prevent the plaintiffs from enforcing the original contract. It is obviously inadmissible for the defendants to set it up as changing the contract, as evidenced by the completed memorandum, and at the same time to deny its obligation for want of their own signature.

It was held by the English court of exchequer, in the recent case of *Bluck* v. *Gompertz*, 7 Welsb., Hurlst. & Gord. 862, that where a correction was made upon the memorandum of a contract by the defendant, and signed only by the plaintiff, the original signature of the defendant was a sufficient signing under the statute. That decision would be applicable to the present case, if the memorandum had been contained in one paper, or if the indorsement had been made upon the part containing the signature of the defendants' agent. It is more doubtful whether it can be held to have the same effect where the memorandum is contained on separate papers, and we do not put the decision on that ground.

The other grounds of exception taken at the trial have not been insisted on by the plaintiff's counsel, and are clearly untenable. *Exceptions sustained.*