■ THOMAS G. STONE, as Administrator of MARY I. STONE, Deceased, Appellant, v. METROPOLITAN LIFE INSURANCE Co., Defendant, and OLIVE WEIN-STEIN et al., Respondents.— In an action to recover the proceeds of a life insurance policy on the ground that by contract with the insured the latter agreed not to change the name of the designated beneficiary, to wit, Mary I. Stone, who is the plaintiff's intestate, plaintiff appeals from a judgment of the Supreme Court, Queens County, entered October 5, 1961, upon the

decision of the court, after a nonjury trial, dismissing the complaint on the merits and directing payment of the proceeds to the individual defendants. Judgment reversed on the law and the facts, with costs, and judgment directed in favor of plaintiff in accordance with the prayer in the complaint and with the stipulation of the parties. Findings of fact contained in the decision of the court, insofar as they may be inconsistent herewith, are reversed; and new or additional findings, as indicated herein, are hereby made: In a letter by Nehemiah Rosing, attorney for plaintiff's intestate (Mary I. Stone, hereafter referred to as Mary), to decedent (Emile A. Stone), acknowledged by him, he (said decedent) was put on notice as of April 19, 1950, that Mary desired a separation agreement or would resort to legal action. Thomas, son of Mary and decedent, in a conversation with decedent, advised that he wanted settlement without resort to court and stressed the importance to Mary of irrevocability as beneficiary of life and hospitalization insurance. Decedent then said that he did not want to enter into a separation agreement because he might jeopardize his job. In response to the statement of Thomas that a letter from decedent as to irrevocability of beneficiary and fixation of alimony would be acceptable, decedant said he would write a letter. In his letter to Mary, written on the same day, May 25, 1950, decedent announced that he agreed to send Mary a stated sum each week; that he maintained the insurance and hospitalization for her protection; and that "It has never been my intention to change the beneficiary [sic] of my insurance". Decedent concluded by warning Mary against institution of legal proceedings as involving possible loss of his employment and consequent termination of the insurance. Thereafter decedent was advised by letter of Rosing on June 13, 1950, that Mary was willing to waive the question of revocability of beneficiary "in view of your promise never to change the beneficiary", but felt that other conditions would have to be incorporated in an agreement. In a reply to Mary on June 16, 1950, decedent inveighed against the contemplated resort to legal procedure on the ground that she was receiving all she had demanded and had received his "written assurance" that he would "continue to maintain that policy". Mary did not resort to any legal action until 1951, when the decedent failed to pay her the stipulated weekly sum. On the foregoing facts and findings it is clear that the letters served to constitute a compliance with the writing required pursuant to the Statute of Frauds (*Crabtree* v. *Arden Sales Corp.,* 305 N. Y. 48; *Papaioannou* v. *Britz,* 285 App. Div. 596); that they spelled out, in conjunction with the testimony of sons Thomas and Gerald, a binding agreement on the part of the decedent (*Ehrlich* v. *Cohn,* 1 A D 2d 1004, affd. 2 N Y 2d 886; *Zies* v. *New York Life Ins. Co.,* 237 App. Div. 367; *Salinas* v. *Salinas,* 187 Misc. 509, affd. 271 App. Div. 917); and that the agreement was supported, as to consideration, by the forbearance of Mary from pursuing her legal remedies (*Seymour* v. *Warren,* 179 N. Y. 1, 3–4). Ughetta, Kleinfeld and Hill, JJ., concur; Beldock, P. J. and Brennan, J., dissent and vote to affirm. [30 Misc 2d 729.]