Chief Judge Fuld (dissenting).
The plaintiff landlord seeks a declaration that a lease extension granted to the defendant Roger Gray, Ltd., and signed by one Harry Aprahamian, as Managing Agent for the plaintiff landlord’s corporate predecessor, is invalid. The ground relied on to show invalidity is that the extension is not signed by the party to be charged in accordance with the Statute of Frauds.
It is not disputed that on February 14, 1966, Roger Gray was granted a lease extension in writing, as the statute requires. The question here presented is whether that writing can satisfy the Statute of Frauds when signed by Aprahamian, the “ Managing Agent,” rather than by an officer of the corporation which owned the property. That, in turn, depends upon the authority conferred on Aprahamian in the letter —- dated June 4, 1964 and signed by the president of the corporation, Vartan Jinishian — which recited that Aprahamian should “ continue as Managing *467 Agent ”, a job, I note, he had held for 20 years. The letter provided that Aprahamian would hold the position until six years after Jinishian’s death.
The Statute of Frauds requires that leases for more than one year must be ‘ ‘ subscribed by the party to be charged, or by Ms lawful agent thereunto authorised in writing ” (General Obligations Law, § 5-703, subd. 2, italics supplied). I agree with the court’s conclusion that Aprahamian’s signature must be considered, under the statute, as the signature of an agent and not that of the corporation itself. But I cannot agree with court’s ultimate decision that no issue of fact is presented as to whether Aprahamian was sufficiently ‘‘ authorized in writing ’ ’ to execute the lease extension as agent for the corporation. Accordingly, I do not believe that the plaintiff is entitled to summary judgment.
There can be no question that Aprahamian was “ authorized in writing ” to undertake certain actions on behalf of the corporate landlord. The issue here is whether those actions included signing lease extensions for the building’s tenants. Since, as the court recognizes (opn., p. 465), the written authorization to an agent need not be so specific as to ‘ ‘ name the particular transaction ” in question, we must consider whether the papers on this summary judgment motion warrant a decision that an appointment as “ Managing Agent ” cannot reasonably furnish the requisite authority.
The court’s decision rests on the assumption that “ authority to manage [does] not imply any authority to execute leases or renewals ” (opn., pp. 464-465). I dispute this hypothesis, for leasing may well be a central part of the Managing Agent’s job. According to the Restatement of Agency (black letter), authorization to manage property endows one with the “ authority to lease ” it (Restatement, Second, Agency, § 67): “ Unless otherwise agreed, authority to lease land or chattels is inferred from authority to manage the subject matter if leasing is the usual method of dealing with it ”. (Emphasis supplied.) If this be so, then, it logically follows that there is authority to arrange and execute extensions, for an extension is nothing more or less than a new lease on the old terms.
The letter designating Aprahamian as Managing Agent, therefore, at least supplies an inference that he could make contracts for lease extensions. As Professor Corbin notes (2 Corbin, *468 Contracts [1963], § 526, p. 782), “ [t]he authority to execute a written memorandum [in satisfaction of the Statute of Frauds] may be proved by implication from authority to make the contract.” Thus, it is unimportant that the letter does not specifically state that Aprahamian could execute written lease extensions. His authority to make such contracts is readily inferable from his position. Whether this inference can be substantiated is, of course, a question of fact, and the record before us is more than ample to create an issue sufficient to defeat a motion for summary judgment. Not only does Aprahamian assert in his affidavit that in the 20 years during which he acted as Managing Agent he “ negotiated the leases and the extensions of leases ” for tenants in the building but he actually points to at least four lease extensions (March, 1953; March, 1955; April, 1959; March, 1965) which he did sign—three of them prior to the 1964 letter — on behalf of the corporation with Jinishian’s full knowledge and approval. These documents, far from deserving the epithet ‘ ‘ inaccurate if not perjured recollections ” (opn., p. 465), could be interpreted to establish that, when in 1964 Jinishian “ continued ” Aprahamian’s employment as Managing Agent, he fully intended to authorize him to sign lease extensions. Be that as it may, as I have already stated they create a question of fact as to this issue.
The court’s discussion in which it compares the prior extensions with the extension to the tenant in this case, (opn., pp. 465-466) is quite irrelevant to the issue before us. That the lease extension herein may not be proper in form is a question involving interpretation of that document, not of the letter granting Aprahamian his authority. Moreover, the fact that the other extensions in the record had to be sighed by the tenant and returned by him to the landlord has no bearing whatsoever on Aprahamian’s power to bind the landlord. What the prior extensions do show, I repeat, is that it is reasonable to assume, and thus create an issue of fact, that Aprahamian’s authority to act as Managing Agent was understood by Jinishian, his principal, to empower him to sign lease extensions.
The court points to a detailed contract (opn., p. 464), executed in 1945, between Jinishian and a corporate managing agent (Wm. A. White & Sons), to refute the defendant’s position that the simple letter to Aprahamian could have conferred the *469 broad authority claimed for it. I believe that this 1945 agreement is irrelevant. In the first place, it dealt with a different building than the one which Aprahamian was authorized to manage. In the second place, and of greater significance, it is manifest that more detail would be required in dealing with an impersonal corporate manager than with a close associate — and presumably a friend—who had been acting as Managing Agent for many years. In the latter case, there would be no need to set out in detail the procedures which the two men knew so well. Exactly what those procedures were requires further proof.
In sum, and having in mind this court’s liberal interpretations of the writing requirements of the Statute of Frauds (see, e.g., Bradkin v. Leverton, 26 N Y 2d 192; Crabtree v. Elizabeth Arden Sales Corp., 305 N. Y. 48), we should not approve a grant of summary judgment to the plaintiff. The letter continuing Aprahamian as the ‘ ‘ Managing Agent ’ ’ raises a question of fact as to whether he was authorized to sign the lease extension. If he was, then, the letter is a written memorandum of such authority as to satisfy the statute.
I would affirm the order appealed from and answer the certified question in the affirmative.
Judges Burke, Scileppi, Jasen and Gibson concur with Judge Breitel; Chief Judge Fuld dissents and votes to affirm in a separate opinion in which Judge Bergan concurs.
Order reversed, with costs, against respondent Gray and case remitted to Special Term for further proceedings in accordance with the opinion herein. Question certified answered in the negative.