In re **MANHATTAN WOODS GOLF CLUB, INC., Debtor.**

Steve **MORGAN**, Morgan Hughes & Company and Terumasa Arai, Appellants,

v.

**MANHATTAN WOODS GOLF CLUB, INC., Appellee.**

No. 95 CV 7828.

United States District Court, S.D. New York.

Feb. 14, 1996.

Jeffrey L. Sapir, White Plains, NY, for Appellants.

Rapport, Meyers, Griffen, Whitbeck, Shaw & Rodenhausen, Hudson, New York, for Appellee.

## MEMORANDUM DECISION and ORDER

PARKER, District Judge.

### BACKGROUND

Appellants, Steven Morgan, Morgan Hughes & Company ("Morgan") and Terumasa Arai ("Arai"), appeal from an order of the Bankruptcy Court, dated August 9, 1995, granting the motion of the debtor, Manhattan Woods Golf Club, Inc., to expunge their claims. Morgan timely filed a proof of claim for $1,383,333 due him pursuant to an alleged "management and services agreement" with the debtor dated May 22, 1992 ("the Morgan Agreement"), which obliged the debtor to pay him $200,000 annually from December 1, 1990, until November 30, 1999. Arai timely filed a proof of claim for $470,000 due him pursuant to an alleged seven year employment agreement with the debtor's parent corporation, Manhattan Woods Corporation ("MWC"), dated April 1, 1990 ("the Arai Agreement").

The Bankruptcy Court disallowed their claims on the grounds that (1) the Morgan and Arai Agreements were barred by the

writing requirement of the statute of frauds, (2) the Morgan Agreement was not enforceable under the equitable doctrine of estoppel, and (3) corporate veil-piercing was unavailable as a matter of law to enforce either the Morgan or Arai Agreement against the debtor.

## FACTS

In 1990, Mutsumi Corporation, a Japanese corporation, through its subsidiary Manhattan Woods Japan Company, Ltd., formed MWC. Appellants were both directors and officers of MWC. That same year, MWC acquired approximately 230 acres of property in Rockland County, New York, to develop a golf course. In 1992, MWC negotiated a $3 million secured loan for the development of the golf course from Kennedy Funding, Inc. The loan was conditioned upon Morgan's personal guarantee and the formation of a new corporation. The debtor was formed in May of 1992 for this purpose. Ownership of MWC's 230 acres was transferred to the debtor in exchange for all the common stock of the debtor. The debtor received the loan from Kennedy Funding in June of 1992. Appellants were both directors and officers of the debtor. In August of 1992, Mutsumi Corporation executed a stock purchase agreement with Forum Kaihatsu by which Forum Kaihatsu acquired the stock, and thus control, of MWC.

Shortly thereafter, the debtor developed financial difficulties. In September of 1992, the debtor filed its Chapter 11 petition. On October 31, 1992, appellants received documents purporting to remove them as officers and directors of the debtor. Thereafter, appellants filed their proofs of claim, which were disallowed by the Bankruptcy Court and are the subject of this appeal.

Appellants raise three issues: whether the Bankruptcy Court erred in (1) dismissing appellants' claims as barred by the statute of frauds without a hearing; (2) holding that the debtor could not be held liable pursuant to the doctrine of corporate veil-piercing for the contractual obligations of its parent corporation, MWC, as a matter of law; and (3) dismissing appellants' claims without a hearing as required under 11 U.S.C. § 502 and Rule 3007 of the Federal Rules of Bankruptcy Procedure.

The Bankruptcy Court granted summary judgment in favor of the debtor. For the reasons stated below, the Bankruptcy Court correctly dismissed appellants' claims and its decision is affirmed.

## DISCUSSION

*1. Whether the Bankruptcy Court erred in dismissing appellants' claims as barred by the statute of frauds without a hearing*

Because the Morgan and Arai contracts by their terms were not capable of performance within one year, they are barred by the statute of frauds unless they were in writing and signed by the debtor. See *Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.,* 742 F.Supp. 808, 809 (S.D.N.Y.1990); N.Y.Gen.Oblig.Law § 5–701.[1] However, "[t]he statute of frauds does not require the memorandum to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of the subject-matter and occasion." *Crabtree v. Elizabeth Arden Sales Corp.,* 305 N.Y. 48, 54, 110 N.E.2d 551, 553 (1953). "[A]t least one writing, the one establishing the contractual relationship between the parties, must bear the signature of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed." *Crabtree,* 305 N.Y. at 55, 110 N.E.2d at 554.

The Bankruptcy Court correctly found that the record did not include any document establishing the alleged contractual relationships signed by the debtor. The Arai Agreement was signed only by Arai and MWC. Although the Morgan Agreement purports to

1. The New York statute of frauds provides in pertinent part: Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: 1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime. N.Y.Gen. Oblig.Law § 5–701.

set forth the terms of an agreement between Morgan and the debtor, it is unsigned.

The documents from which Morgan attempted to piece together a writing sufficient to satisfy the statute of frauds were also not signed by the debtor. A letter addressed to Morgan, dated August 30, 1990, was signed only by T. Amano as the managing director of Mutsumi Corporation and written on Mutsumi Corporation letterhead. In addition, it made no reference to a transaction between the debtor and Morgan: "[w]e are pleased indeed to have finally attained the agreement on the Management Agreement between Morgan, Hughes & Company and Mutsumi Corporation." The stock purchase agreement, which did refer to an existing contract between Morgan and the debtor was signed only by Forum Kaihatsu, MWC and Mutsumi Corporation, but not the debtor.

The issue on appeal, however, is whether the Bankruptcy Court erred in dismissing the claims as barred by the statute of frauds solely on the basis of the record and without an evidentiary hearing. The question essentially is whether the Bankruptcy Court appropriately ruled under a summary judgment standard of review. Whether the Bankruptcy Court erred in this regard is discussed below in section three.

2. *Whether the Bankruptcy Court erred in holding that the debtor could not be held liable for the contractual obligations of its parent corporation, MWC, as a matter of law*

To pierce a parent corporation's corporate veil (1) the parent corporation must have exercised such control that the subsidiary has become a mere instrumentality of the parent, which is the real actor; (2) such control has been used to commit fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff. See *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir.1991). Liability may be predicated either upon a showing of fraud or that the corporation has been so dominated by another corporation, and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and

can be called the other's alter ego. See *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.1979). The Bankruptcy Court found that appellants failed to provide proof that the corporate form had been used to achieve fraud. In addition, it held that a subsidiary corporation, in the absence of any allegation that it assumed the obligations of the parent corporation, could not be held liable for the obligations of the parent corporation (as its alter ego).

Appellants object to both rulings. First, appellants argue that the Bankruptcy Court erred in finding no proof of fraud without an evidentiary hearing. Again, the issue is whether the Bankruptcy Court appropriately applied a summary judgment standard of review, which is discussed below in section three. Second, appellants argue that the Bankruptcy Court erred in holding that "reverse corporate veil-piercing"—holding the subsidiary liable for the obligations of the parent as opposed to holding the parent liable for the obligations of the subsidiary—was unavailable as a matter of law.

The Bankruptcy Court relied on *In re Thomson McKinnon Securities, Inc.*, 149 B.R. 61 (S.D.N.Y.1992). On startlingly similar facts, *Thomson* held that, because "obviously, the subsidiary ... cannot be held to have dominated its parent corporation," the subsidiary cannot be held liable for the obligations of its parent, except in rare occurrences, such as when the identity of the actual party to a contract is sufficiently unclear. *Thomson*, 149 B.R. at 73 (citing *In re Mid–West Metal Products, Inc.*, 13 B.R. 562 (Bankr.D.Kan.1981)). See also *North River Insurance v. Philadelphia Reinsurance Corp.*, 831 F.Supp. 1132, 1149 (D.N.J.1993) (rejecting "reverse corporate veil-piercing" argument). *Thomson* further noted that there was "an additional reason why reverse corporate veil piercing is inappropriate. The claimants are executive officers and directors of the subsidiary," and therefore charged with the knowledge that the entity is separate and distinct from the corporate parent and with the duty to maintain the separate corporate integrity. As such, they should not be permitted to profit at the expense of the subsidiary's creditors by disregarding the

corporate entity they are charged to maintain. *Thomson*, 149 B.R. at 73. Because appellants were also officers and directors of the debtor, the same reasoning applies here.

*3. Whether the Bankruptcy Court erred in dismissing appellants' claims without a hearing as allegedly required under 11 U.S.C. § 502 and Rule 3007 of the Federal Rules of Bankruptcy Procedure*

■ The Bankruptcy Court ruled upon the debtor's motion using a summary judgment standard of review: "I have assumed as true those facts which I have employed in this decision and which I have adopted from the various submissions of Arai and Morgan (rather than hold an evidentiary hearing to fill in some of the missing gaps). I have done so also because I do not find any disputed issue of fact to be outcome determinative." Decision, p. 2. Appellants argue, however, that under the applicable rules they were entitled to a hearing, at which they allege they would have introduced, for example, other writings signed by the debtor that would have satisfied the statute of frauds, see, e.g., Response to Debtor's Objection to Unsecured Claims of Steve Morgan, ¶ 18.

The debtor moved pursuant to 11 U.S.C. § 502(a) [2] and Rules 3007 [3] and 9014 of the Bankruptcy Rules for an order denying the claims of the appellants. Appellants argue that these rules provide that a court may rule upon an objection to a claim only upon notice and a hearing. Rule 9014, however, makes Rule 7065 (which incorporates Rule 56 of the Federal Rules of Civil Procedure) applicable to contested matters such as objections to proofs of claim. See *In re The Drexel Burnham Lambert Group, Inc.*, 161 B.R. 902, 905 (S.D.N.Y.1993). Rule 9014 provides:

In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion. The motion shall be served in the manner provided for service of summons and complaint by Rule 7004, and, **unless the court otherwise directs, the following rules shall apply: . . . 7056. . . ."** [4]

Fed.R.Bankr.P. 9014 (emphasis added).

Although the debtor did not expressly move under Rule 7056, it did move pursuant to Rule 9014 which states that Rule 7056 shall apply unless the court directs otherwise. Neither 11 U.S.C. § 502(a) nor Rule 3007 provide to the contrary. Rule 3007 merely sets forth the time by which a copy of a debtor's objection and notice for a hearing must be served. And, section 502(a) incorporates section 502(b)(1) which provides for notice and a hearing unless the claim is unenforceable against the debtor under applicable law. Here, the statute of frauds render the appellants' claims unenforceable against the debtor.

Presumably on the court's direction, appellants responded, with documents attached to their papers, to the debtor's motion objecting to their claims and requesting relief in the form of expunging the claims. Thus, appellants were neither denied notice nor an opportunity for a hearing. The Bankruptcy Court merely found that there was no genuine issue of material fact raised in their response papers to hear. A hearing is not always required as a matter of law; because Rule 9014 makes Rule 7056 applicable to contested matters, such as proofs of claim, and because there were no genuine issues of

2. Section 502(a) provides "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Section 502(b)(1) provides " . . . if such objection to a claim is made, the court, after notice and a hearing, shall . . . allow such claim in such amount, except to the extent that—(1) such claim is unenforceable against the debtor . . . , under any agreement or applicable law . . . " 11 U.S.C. § 502(b)(1).

3. Rule 3007 provides that "[a] copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor, or debtor in possession and the trustee at least 30 days prior to the hearing." Fed. R.Bankr.P. 3007.

4. Rule 7056 states "Rule 56 F.R.Civ.P. applies in adversary proceedings." Fed.R.Bankr.P. 7056.

material fact here, the Bankruptcy Court correctly dismissed appellants' claims without a hearing.

SO ORDERED.