97 N.Y.2d 661 (2001)
764 N.E.2d 954
738 N.Y.S.2d 654
DOLORES RUPERT, Respondent,
v.
PHILIP D. RUPERT, JR., Appellant.
Court of Appeals of the State of New York.
Argued November 13, 2001.
Decided December 13, 2001.
*662 Gates & Adams, P. C., Rochester (Douglas S. Gates of counsel), for appellant.
Joan de R. O'Byrne, Rochester, for respondent.
Before: Chief Judge KAYE and Judges LEVINE, CIPARICK, ROSENBLATT and GRAFFEO concur; Judge SMITH dissents and votes to reverse in an opinion; Judge WESLEY taking no part.

OPINION OF THE COURT
MEMORANDUM.
The appeal should be dismissed, without costs.
Defendant husband appeals to this Court from the final judgment of Supreme Court to bring up for review a prior nonfinal Appellate Division order (245 AD2d 1139 [1997]), which held an antenuptial agreement and two other documents amending that agreement valid and enforceable as one integrated agreement and remitted the case to Supreme Court, indicating that "further proceedings before the court should include the *663 identity and value of the property obtained by the parties after the marriage" (id., at 1142). Upon remand from the Appellate Division, Supreme Court resolved the financial issues, and further determined that the case could have been decided on a theory of promissory estoppel with the same result, thereby recognizing an alternative basis to enforce the terms contained in the agreement and amending documents.
On an appeal taken to this Court from a final judgment of Supreme Court to bring up for review a prior nonfinal Appellate Division order, the Appellate Division order must necessarily affect the final judgment (see, CPLR 5602 [a] [1] [ii]). Inasmuch as the final judgment of Supreme Court rests on an alternative basis for the result reached by the Appellate Division, the Appellate Division's nonfinal order does not necessarily affect the final determination. Accordingly, the appeal must be dismissed. We note that the dismissal of this appeal does not constitute an adjudication on the merits or an affirmance of the Appellate Division order.
SMITH, J. (dissenting).
Because I do not agree that a properly executed antenuptial agreement may be modified by documents that fail to comply with the formal execution requirements of Domestic Relations Law § 236 (B) (3), I dissent.
On July 15, 1982, the day before the parties were to be married, plaintiff and defendant executed an antenuptial agreement. The agreement provided that all separate property was to remain separate; that each party waived the right of election; that during the marriage, each party was to take care of him or herself financially; and that in the event of a matrimonial action, neither party was to provide maintenance for the other. There is no dispute that such execution was accomplished at the office of plaintiff's attorney, after much discussion and against the advice of plaintiff's attorney. There is no dispute that the agreement was subscribed by the parties and acknowledged pursuant to the requirements of Domestic Relations Law § 236 (B) (3).
That same evening, after plaintiff expressed doubts about the antenuptial agreement and that she wanted to cancel the wedding, defendant gave plaintiff a hand-written letter dated "Friday" and signed "Love, Pete" (his nickname), which he said he had intended to give her the next day. The letter stated in pertinent part, "Our marriage assets accumulated after our marriage should be split ½ ½ for it will be garnered together." This phrase contradicted several clauses of the antenuptial *664 agreement, one of which stated, "all property acquired in the name of one party shall be to the exclusion of the other and that neither shall have any claim or interest in such after-acquired property of the other."
Plaintiff read the letter but was not reassured and again told defendant that the marriage should be cancelled. Defendant then wrote out the "Five Point Document" which provided as follows:
"1. All assets prior to 7/16 are frozen.
"2. All acquired property or other equities after 7/16 are to be in both names.
"3. Pay for all * * * school course[s] in case of separation.
"4. All assets acquired after 7/16 are to be split equally if separation occurs.
"5. Any expenses incurred by [plaintiff] if separation occurs will be paid by myself."
There is no dispute that the Five Point Document was not signed by either party.
In September 1991, plaintiff commenced this action for divorce on the ground of cruel and inhuman treatment. Defendant interposed counterclaims for divorce, enforcement of the antenuptial agreement and tortious interference. At trial, on the issues of divorce and the validity of the antenuptial agreement, both parties testified, as did nine other witnesses. Plaintiff's attorney averred that defendant represented to him "that the agreement would be fundamentally null and void, that it was, after a couple of years if they were still getting along that he was going to, he would provide for her and that, you know, they would share things together." Plaintiff's attorney averred that even after hearing this assurance from defendant, he advised plaintiff not to sign the agreement.
Supreme Court held and the Appellate Division affirmed, that the Friday letter and Five Point Document were enforceable. The courts reasoned that the antenuptial agreement consisted of the original agreement, as modified by the Friday Letter and Five Point Document, because an agreement could consist of signed and unsigned writings provided that they clearly referred to the same subject matter or transaction and that parole evidence was admissible to show the connection between the writings and the parties' agreement to them. I do not agree.
*665 Domestic Relations Law § 236 (B) (3) provides: "An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded." "This requires both that an oral acknowledgment be made before an authorized officer and that a written certificate of acknowledgment be attached (see, Real Property Law §§ 291, 306). As this Court has explained, `[a]n instrument is not "duly acknowledged" unless there is not only the oral acknowledgment but the written certificate also, as required by the statutes regulating the subject' (Rogers v Pell, 154 NY 518, 529)." (Matisoff v Dobi, 90 NY2d 127, 137-138 [1997].)
In Matisoff, this Court held that a separation agreement which had been signed but not acknowledged was not enforceable in a matrimonial action. The Court concluded that "the unambiguous statutory language of section 236 (B) (3), its history and related statutory provisions establish that the Legislature did not mean for the formality of acknowledgment to be expendable" (90 NY2d, at 135). The Court also noted that prior to the adoption of section 236 (B), the validity of an antenuptial agreement was determined by the Statute of Frauds, and thus an agreement was not void as long as there was some writing subscribed by the party to be charged. The Court, however, concluded that section "236 (B) * * * does not incorporate the safeguards of the Statute of Frauds. Rather, it prescribes its own, more onerous requirements for a nuptial agreement to be enforceable in a matrimonial action" (id., at 134). The Court rejected the equitable considerations presented by the appellant in favor of a bright-line rule requiring acknowledgment, noting that such a rule serves to prevent fraud and "is easy to apply and places couples and their legal advisors on clear notice of the prerequisites to a valid nuptial agreement" (id., at 135-136).
In the present matter, any modification to the properly acknowledged antenuptial agreement would also need to be acknowledged. "The statute is clear and precise. * * * [§] 236 (B) (3) requires acknowledgment for a valid, enforceable marital contract, excepting no agreement. The statute itself thus provides no support for [the] contention that the Legislature intended some agreements, though unacknowledged, to be enforceable" (id., at 133-134). The Appellate Division's reliance on the general principles enunciated in Crabtree v Elizabeth Arden Sales Corp. (305 NY 48 [1953]) is misplaced. That case *666 did not deal with an antenuptial agreement. Rather, in that case, this Court was called upon to decide whether a two-year employment contract was valid and concluded that an agreement may consist of signed and unsigned writings "provided that they clearly refer to the same subject matter or transaction" (id., at 55). The more onerous requirements of Domestic Relations Law § 236 (B) (3), however, control the present case. The Friday Letter and the Five Point Document are unenforceable and cannot be used to negate or vary the terms of a duly executed antenuptial agreement. Any other result permits effective nullification of a validly acknowledged nuptial agreement by informal writings that are not signed or acknowledged or dated, and that make no reference to the agreement they are said to amend.
Turning to the majority's dismissal, the Appellate Division modified Supreme Court's order and remanded to Supreme Court for further proceedings, which were to include the identity and valuation of the property obtained by the parties after the marriage.
Upon remand, Supreme Court declared that it was "bound by the Appellate Division's decision of affirmance in Rupert v Rupert, 245 AD2d 1139 [4th Dept 1997]." Supreme Court further noted that the Appellate Division decision, "as law of the case," required Supreme Court "to consider the original agreement, the Friday Letter and the Five Point Document as the entire agreement between the parties." Supreme Court then went on to "identify and fix the value of the property acquired after the parties' marriage" and to calculate the appreciation of assets held by each side at the time of marriage.
Supreme Court went on to address defendant's argument that the Appellate Division decision misapplied or misapprehended this Court's decision in Matisoff v Dobi (supra). In that regard, Supreme Court noted that "the present case could have alternatively been decided on a theory of promissory estoppel with the same result." It is this statement on which the majority rests its decision to dismiss. Under the majority's reading of the statement, Supreme Court used an alternative basis, promissory estoppel, to enforce the "Friday Letter" and "Five Point Document" as modifications to the antenuptial agreement.
The majority would dismiss, reasoning that the final judgment of Supreme Court was based on promissory estoppel as an alternative basis for the result reached by the Appellate Division and, thus, the Appellate Division order cannot be said *667 to necessarily affect the final determination within the meaning of CPLR 5602 (a) (1) (ii). A "prior determination `necessarily affects' the final judgment * * * if it can be shown that the final judgment would not have come into existence if the prior determination had gone the other way" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5601:6, at 446). In the present case, Supreme Court based its judgment on the law of the case as articulated by the Appellate Divisionthat the antenuptial agreement consisted of the original agreement, the Friday Letter and the Five Point Document. Supreme Court applied this law when it reasoned that the "Friday Letter" directed it to split the "assets accumulated after the marriage * * * ½ ½," and when it reasoned that "Point 4" of the "Five Point Document" directed it to appreciate the assets held by each side at the time of the marriage.[*] Had the Appellate Division held that only the original antenuptial agreement was enforceable, Supreme Court could not have apportioned the assets as it did. Because the Appellate Division order thus necessarily affected Supreme Court's final determination, this Court has jurisdiction to reach the merits of the Appellate Division order, and I would reverse the Appellate Division.
Accordingly, I dissent.
Appeal dismissed, without costs, in a memorandum.
NOTES
[*] The Final Judgment provides that it is "Ordered, Adjudged and Decreed, [that] the Plaintiff, Delores Rupert is entitled to Five Hundred Fifty-Six Thousand Four Hundred and Five Dollars ($556,405.00), representing fifty percent (50%) of the value of assets acquired during the marriage, and fifty percent (50%) of the appreciation or increase in the value of such assets before and after marriage."